STEINWAY v. STEINWAY et al.

(Supreme Court, Appellate Division, First Department. December 31, 1897.)

COMPROMISE AND SETTLEMENT—EFFECT.

In an action brought by one of the next of kin of a testator to procure a judgment declaring void a certain clause in the will, on the ground that it suspended for more than two lives the absolute ownership of certain corporation stock therein disposed of, it appeared that the will had been admitted to probate; that all the persons entitled under the will, including plaintiff, had executed an agreement in the nature of a family settlement authorizing a final distribution as directed in the will; that the executors had made distribution accordingly; that, pursuant to the agreement, and for valuable consideration, the plaintiff gave a full release under seal, not only of the executors, but also of the estate, from any further claim; that the executors relinquished their large commissions, and the other legatees had expended moneys, and gone into the recapitalization of the corporation, upon the faith of the agreement, distribution, and release. *Held*, that the plaintiff had no standing to maintain his action, and thus reopen the settlement.

Appeal from special term.

Action by Henry W. T. Steinway against Charles H. Steinway and others. From a judgment for plaintiff, defendants appeal. Reversed.

The action was brought to recover a judgment declaring void the provisions of the thirty-third clause of the will of C. F. T. Steinway, deceased, and to obtain an accounting by the trustees named therein of the income received and distributed by them thereunder. The ground of the objection to the validity of the clause in question is thus stated in the opinion of the court below: "The intention of the testator is clear, and I think it also clear that to carry that intention into effect would be to violate the one limitation which the law of this state imposes upon the disposition of personal property, and that is that the vesting of the absolute ownership of such property cannot be suspended for any longer period than two lives in being at the date of the instrument containing the limitation or condition."

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

E. W. Cotterill, for appellants.

E. B. Hill, for respondent.

PATTERSON, J. In the view we take of this cause, it is unnecessary to pass upon the question of the validity of the trust created by the thirty-third clause of the will of Christian F. T. Steinway. At the threshold of the case there is an insurmountable obstacle to the maintenance of the action by the plaintiff. In our opinion, he has no standing in court to wage the contest. It is set up as an affirmative defense that the executors of the will have paid all the debts and pecuniary legacies, and made distribution of the property, as required by its terms; that they have relinquished their commissions to the estate in a large sum, to which commissions they were entitled by law; that, in consideration of such relinquishment and other good and valuable considerations, the plaintiff, by an instrument in writing, under his hand and seal, quitclaimed and forever released the executors and the estate of the testator from all claims and demands of himself and his heirs or administrators. It is further set up in the answer that the will of Mr. Christian F. T. Steinway was duly admitted to probate; that appraisers were appointed of the estate for the purpose of ascertaining the amount of the collateral inheritance tax; that the amount of the tax to be paid on the legacies, including the 4,000 shares of stock mentioned in the thirty-third clause of the will, was paid with the knowledge and acquiescence of the plaintiff; that the shares of stock mentioned in that clause of the will were divided, and set apart to and for the use and benefit of the several legatees, agreeably to the terms of the will, with plaintiff's knowledge and acquiescence, and the dividends thereon have been paid to the legatees to the amount mentioned in that clause of the will, and the excess of income has been retained by the executors, as provided for in the will, ever since the time of the probate, and down to the time of the commencement of this action; and, further, that at a meeting of the stockholders of the corporation which issued the 4,000 shares of stock mentioned in such clause of the will, called for the purpose of increasing the capital stock, such capital stock was increased, and

the 4,000 shares mentioned in that clause of the will were represented in the proportions as bequeathed in said will, and that to the several legatees and their representatives entitled to participate in the increase "there was allotted their proportions of the increase in said capital stock agreeably to said will, amounting to thirteen hundred and thirty-three shares, and they respectively subscribed and paid for their proportions of said stock," amounting in the aggregate to the sum of $133,000, or thereabouts, and the said stock was issued to them accordingly; and that all this was done with the knowledge and consent of the plaintiff herein. All these facts set up in the answer as affirmative defenses were fully proven. The plaintiff was entitled to a legacy independently of the thirty-third clause, under the will of Mr. Christian F. T. Steinway, and received and receipted for his legacy. Under these circumstances, the contention is made by the defendants that the plaintiff has no standing in court to maintain this action. That contention is based primarily upon the theory that, having received his legacy, he cannot maintain an action of this character without making restitution of that which he has received. There was authority for that position in the case of Chipman v. Montgomery, 63 N. Y. 221. In the opinion of the court in that case that proposition is distinctly stated, but that case seems to be no longer controlling on that point. In Wager v. Wager, 89 N. Y. 161, the court of appeals said that Chipman v. Montgomery was decided on the special facts of the case, and that there were rulings in that opinion which the court would not follow. In Read v. Williams, 125 N. Y. 560, 26 N. E. 730, and Underwood v. Curtis, 127 N. Y. 523, 28 N. E. 585, the court distinguished the case first cited, and announced the rule that, where there was an invalid trust of personalty created by will, the executors became the trustees of a resulting trust of that personalty for the residuary legatees or next of kin; that jurisdiction resides in a court of equity to enforce that trust in favor of the residuary legatee or next of kin, and for the benefit of the person who is entitled to the property freed from the void testamentary trust. Hence, anyone who would be the owner of the property would be entitled to the enforcement of that trust, and the mere fact that he had received something else under the will would not deprive him of his ownership, or of his right. But that does not dispose of the question of the plaintiff's ability to maintain a suit in equity. He can only stand in court in the same way that any other person seeking equitable relief on any other ground of equitable jurisdiction might stand.

It appears in this case that all the parties interested under the will of Mr. Christian F. T. Steinway came together for the purpose of making what may be called a family settlement. They all desired that the testator's intention, as expressed in the will, should be carried out. To that end, an agreement was signed, dated April 6, 1891, which recited, among other things, that it was very desirable that the estate of C. F. Theodore Steinway should be closed up, and the assets finally distributed and paid over "to the heirs at law according to the terms of the deceased's last will and testament," and it provided that "we all consent and authorize the executor of the

said estate to close.up the same, and make the final distribution to the heirs at law as directed in deceased's will," and they separately bound themselves to give a final receipt in duplicate to such executors on receiving from them such share as provided in said will. That agreement was signed by all the persons who were entitled under the will, and under it the executors acted and closed up the whole estate, making the payments as required by the will; and thereafter, and on October 1, 1891, this plaintiff executed a release under seal to the executors, in which he acknowledged the receipt of all he was entitled to under the disposition made by the testator of his property.    The release states that the plaintiff does "hereby quitclaim to and forever release said executors and said estate from any further claim whatsoever of and by myself, my heirs, executors, or administrators, as such heir at law."   The inference is sought to be drawn that he merely released what interest in the estate he would be entitled to technically as heir at law; but that claim is not admissible, for the reason that, in the same release, what he means by the words "heir at law" is declared.   He describes himself as being "one of said testator's testamentary heirs at law."   Therefore there is an agreement of settlement of the estate in accordance with the terms of the will and to carry out the intention of the testator, there is the action of the executors based on that agreement, there is the full settlement of the estate, and in the final distribution by the executors pursuant to the agreement there was given the release under seal of the plaintiff, not only of the executors, but of the estate, from any further claim.   Besides that, there is the distinct proof that the other beneficiaries under the will and the executors have acted upon that which was done by the plaintiff with them; the executors have relinquished their large commissions in favor of the plaintiff and of the other legatees, and such other legatees have actually expended moneys and gone into the recapitalization of the Steinway Company upon the basis of the distribution made to them and the shares acquired by them under the will, and in pursuance of the agreement and of the release which the plaintiff gave.   Under such circumstances, the plaintiff has no standing in a court of equity to do that which, in effect, would be setting aside the whole of this family arrangement, and reopening that which has been settled, adjusted, and ended by his consent and at his procurement.   It is claimed that the case of Brewster v. Striker, 2 N. Y. 19, is an authority contrary to the views we have here expressed.   In that case it was held that certain acts of a party by way of admissions, and the acceptance of releases in a partition suit of the rights of other parties to the action to property set apart to him in severalty, did not constitute an estoppel, because they were not admissions of fact, but conclusions of law.   But this case is entirely different from that.   It is altogether immaterial whether the preclusion of the plaintiff from maintaining the action is called an estoppel or anything else.   The point is that with all that he has done, and the consequences of all that he has done, he has no place in a court of equity to attempt to undo by this action that to which he has bound himself and induced others to become bound.   There is no question of a supreme public policy involved.   The courts will declare

unlawful suspensions of the absolute ownership of personal property to be void whenever their action is properly invoked, but they will not entertain suits merely to defeat family arrangements and agreements at the invitation of a person who has reaped the benefit of such an arrangement, has solemnly abandoned his right to make a contest, and by his acts has put others in a position in which injustice and wrong would result to them if the agreed settlement were to be disturbed or interfered with.

For these reasons, we are of the opinion that the judgment appealed from should be reversed, and the complaint dismissed, with costs. All concur.