(23 Misc. Rep. 418.)

## DUNLAP v. GILL et al.

(Supreme Court, Special Term, New York County. April 25, 1898.)

ESTOPPEL OF HEIRS—ACTS OF ANCESTOR.

Where real property is devised to the head of a religious order, as an individual, but in terms which, though not sufficient to create a trust, yet show the desire of the testatrix that the property be devoted to the use of the order, and where the property, after the death of the testatrix, is spoken of and treated by the devisee and the order as belonging to the latter, and the latter pays the taxes for years, and finally secures exemption from taxation on the ground that the property belongs to it, *held*, that the parties have put a practical construction upon the will as a devise to the institution, and that the heirs of the head of the order, who seek in the action to partition the property, are estopped by the acts of her through whom they claim from asserting that the devise was to her and not to the order.

Action by Laura V. Dunlap against Samuel H. Gill and the Sisters of Charity of St. Vincent de Paul and St. Vincent's Hospital of the City of New York for partition. Judgment for defendants the Sisters of Charity of St. Vincent de Paul and St. Vincent's Hospital of the City of New York.

Morris Putnam Stevens, for plaintiff.

Root, Howard, Winthrop & Stimson, for defendants the Sisters of Charity of St. Vincent de Paul.

Charles E. Miller, for defendant St. Vincent's Hospital of City of New York.

Alonzo C. Farnam, for the other adult defendants.

James C. Foley, of counsel, for defendants.

Norman W. Kerngood, for the guardian ad litem.

DALY, J. The plaintiff, as grandniece and heir at law of Mary Ann Ely, known in religion as Mother Jerome, of the order of Sisters of Charity, commences this action for partition, claiming that Mother Jerome died seised and possessed of certain lots in Fordham, N. Y., and that the title thereto descended to the plaintiff and other heirs named as defendants. Their claim is resisted by the Sisters of Charity, of which order Mother Jerome was superior at the time of her death, in 1885, having been a member of the order since 1827, and a trustee of it from the time of its incorporation, in 1849, to the date of her death, and president from January, 1862, to 1871; also from 1877 to 1885.

The plaintiff asserts title to the lots in Mother Jerome by virtue of a certain devise in a will made by one Margaret Whitworth, on January 6, 1861, as follows:

"I give and devise to Mary Ely, otherwise called Mother Jerome, all the real estate of which I am seised, being certain lots of land situate at Fordham, in the county of Westchester and state of New York, conveyed to me by Stephen Cambreling, to have and to hold the same to her, her heirs and assigns, forever. My purpose in making this devise is to devote the same to the object of a hospital under the charge of the Sisters of Charity, but in expressing this purpose I do not desire to create or attempt to create any trust in law affecting said premises, willing as I am to confide unreservedly in the honor and conscience of said devisee. If said Mary Ely should happen to die before me, then I devise the same as aforesaid to the sister who may at the time of my death be at the head of St. Vincent's Hospital, in the city of New York."

The testatrix, Margaret Whitworth, died within a month after making the will.

From the time of the death of Margaret Whitworth, Mother Jerome treated the property so devised to her as the property of the order to which she belonged, and as devoted to the object of the hospital under its charge. This is shown by the fact that the sisterhood commenced to pay the taxes on the property in the year 1862, and continued to pay them down to the year 1875, when the lots were procured to be exempted from taxation as the property of the Sisters of Charity, and so remained during the whole period of 10 years thereafter down to the time of Mother Jerome's death. The record of the application for such exemption has been lost, but the presumption is that the application was made by the Sisters of Charity, of which Mother Jerome was then a trustee. Under the rules of the order to which she belonged, she made an annual vow of poverty, which vow embraced all gifts and donations made to her by way of gratitude, affection, or alms, as belonging of right to the community. It is testified that in 1870 she made declarations to the sisters concerning the kindness of the lady who had donated this property, and in 1872 spoke of it to one of the sisters as the property of the hospital.

Apart from the declarations so made, the facts proved show that Mother Jerome construed the devise of the property to her as a devise or gift to the religious order to which she belonged, and that such construction was acquiesced in by the sisterhood, which was induced, by the act of the devisee, to pay the taxes and claim the exemption as aforesaid. These facts are conclusive against the claim now made by the plaintiff and the other heirs of Mother Jerome.

We are not concerned with the question whether a trust was actually created by the will of Margaret Whitworth in favor of the hospital or of the order which supported it, but with the consideration that Mother Jerome and the order adopted a practical construction of the will as a devise to that institution, and that the latter was induced not only to disburse the moneys for taxes year by year, but finally to claim exemption from all taxation on the ground that the property belonged to the religious corporation. These facts would undoubtedly have estopped Mother Jerome in her lifetime from asserting title as against the religious order to which she belonged; and, by privity with her, her heirs are equally estopped from asserting such title. They affirm the validity of the will and of the devise, which, indeed, they could not attack, not being heirs of the testatrix; and whatever construction of the devise was adopted by the devisee, and which precluded her from asserting individual title, must be equally binding upon them. They claim that she had the absolute right to dispose of the property as she pleased, and so she was at liberty to work an estoppel against herself and equally against them.

Nothing can be more complete than the estoppel in this case. Mother Jerome, the owner of the fee, being a trustee of a religious body, permitted its charitable funds to be used to pay the taxes on the property which stood in her name, and ultimately permitted a claim of title of such corporation to be used to procure the exemption of the property from its legal charges. To permit her to question such

title after such acts would but assist her in perpetrating a fraud; and it is not only the state which would be defrauded by permitting such claim, but the religious body to which she belonged and which had been induced to assert ownership in good faith to procure the exemption, and which would be laid open to a charge of participation in the fraud of the devisee if its title could now be disputed by her or her heirs.

The acts of Mother Jerome are found to be consistent throughout with her obligations—First, to her religious vows, which imperatively required her to treat this property as a donation or alms to the order; second, to her legal obligations as trustee of the religious corporation for which she had the right to assume that the property was intended; and, third, to her construction of the will of Margaret Whitworth as a devise in aid of a charity in which the sisters were engaged. This construction would undoubtedly commend itself to a devisee who had then been in the religious community for 25 years, and who would read the will as intending that the property donated should go, not to her individually, but to the charity. This would be apparent, not only from the wish expressed to devote the property to the object of a hospital under the charge of the sisters, but by the provision that, if the particular devisee should die before the testatrix, the property should go to the sister who at the death of the latter should be at the head of St. Vincent's Hospital.

Although not in form creating a trust, the will was so construed for over 24 years by the devisee, and practical effect was given to it by her and the assumed beneficiaries thereunder, who were induced thereby to alter their position irrevocably. There can be no question as to this fact of practical construction. We must concede it, or else convict the devisee, Mother Jerome, of intending a scheme for depleting the treasury of her order, and for defrauding the state, and all for the benefit of distant collateral relatives. She died intestate, an indication that she believed she had disposed of the property according to her understanding of the wishes of the donor, and that she had no personal interest in it to devise.

That the owners of real estate may by their acts estop themselves from asserting claim or title to such property in themselves and from denying it in another is a principle too firmly established to be questioned (Favill v. Roberts, 50 N. Y. 222; 7 Am. & Eng. Enc. Law, 18 et seq., and notes and cases cited), and the decision in this case should be that the plaintiff and the other defendants as heirs of Mother Jerome have no claim or title to the lots in question after the construction placed by her for so long a period of time upon the devise in her favor, and also on the ground that her heirs are estopped by her act from asserting title against the Sisters of Charity or St. Vincent's Hospital.

Judgment for defendants the Sisters of Charity of St. Vincent de Paul and St. Vincent's Hospital of the City of New York.