STARR et al. v. SELLECK et al.

(Supreme Court, Appellate Division, First Department. July 7, 1911.)

1. CHARITIES (§ 10*)—VALIDITY—PUBLIC POLICY.

Testator left certain property to trustees to be used towards maintaining a clubhouse "for the social resort of young men and boys upon the west side of the city of New York, borough of Manhattan, or to the purposes of similar work, social or educational, for such young men or boys, as individuals." Held, that the trust was not contrary to public policy.

[Ed. Note.—For other cases, see Charities, Dec. Dig. § 10.*]

2. CHARITIES (§ 21*)—VALIDITY—INDEFINITENESS OF TRUST.

Laws 1893, c. 701, amended by Laws 1901, c. 291, provides that no gift to benevolent uses, otherwise valid, shall be deemed invalid by reason of the indefiniteness of the beneficiaries. Testator left certain property to trustees to be used towards maintaining a clubhouse for the social resort of young men and boys in the city of New York, or to the purposes of similar work, social or educational. Testator had founded a social settlement and paid the bulk of its expenses and the trustee applied the trust income to its support. Held, that the object of the trust was sufficiently defined, that the use to which the fund was devoted was benevolent, though nominal fees were paid by those benefited, and that the trust cannot be invalidated for uncertainty of beneficiaries.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 44–50; Dec. Dig. § 21.*]

3. DESCENT AND DISTRIBUTION (§ 72*)—ESTOPPEL—ACQUIESENCE.

Testator left certain property in trust to be devoted to a benevolent use specified. An heir who had been left an annuity by testator signed an agreement that the trust should be carried out and executed quitclaim deeds whenever real estate included in the trust was sold, and the trustee, who was also an heir, relying on her relinquishment, gave up all his rights in the property and executed the trust, devoting the income of the property to the benevolent use specified for five or six years, and until his death. Held, that the heir was estopped to claim a share of the income thus expended, and equity will not sustain her claim to a share of the corpus of the estate whether or not she was technically estopped to claim such share.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 221, 222; Dec. Dig. § 72.*]

Laughlin and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Louis M. Starr and another, as executors of the estate of Theodore G. White, deceased, against Harriet E. Selleck, impleaded with others. From a judgment for plaintiffs, Harriet E. Selleck appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

See, also, 138 App. Div. 277, 122 N. Y. Supp. 1054.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, MILLER, and DOWLING, JJ.

Omar Powell, for appellant.

Eugene H. Hatch, for respondents Starr.

William A. Alcock, for respondent Gordon House.

Robert P. Beyer, for Attorney General.

McLAUGHLIN, J. On the 17th of July, 1901, Theodore G. White died, leaving a will by the third paragraph of which he gave all the real estate and stocks standing in his name, and his bank deposits, to trustees "to be used towards the purpose of maintaining a clubhouse or clubrooms for the social resort of young men and boys upon the west side of the city of New york, borough of Manhattan, or to the purposes of similar work, social or educational, for such young men or boys, as individuals." He was unmarried, and his sole heirs at law and next of kin were his aunt, the appellant Selleck, and his cousin, Theodore B. Starr, who, with his two sons—who are respondents on this appeal—were appointed executors, and Theodore B. Starr also became the sole trustee of the trust created by the third paragraph of the will. He was aware that the validity of the trust was open to question, and, being desirous of carrying out the wishes of the testator, he executed an instrument renouncing all claim to the trust property, and the appellant, Selleck, executed a similar instrument, called a "declaration," by which she further requested him to carry out the trust. This he did until his death, in May, 1907, devoting the income to the respondent Gordon House. His sons, the respondents, were his residuary legatees and executors, and they were preparing to have his accounts as trustee settled and a new trustee appointed, when they received a letter from the appellant declining to consent to the further execution of the trust, stating:

"I confess that I am not quite of the same mind that I was at first in regard to the disposition of the property."

They thereupon brought this action to have the accounts settled and the validity of the trust determined. The right to the accounting was not contested, and the court found that the appellant was estopped from asserting the invalidity of the trust. An interlocutory judgment was entered accordingly, from which Mrs. Selleck appeals.

The only questions presented are whether the trust is valid and whether the appellant is in a position to dispute its validity.

[1] The trust certainly is not contrary to public policy, so that, if she is estopped from attacking it, it will be enforced by the courts. Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305; Steinway v. Steinway, 24 App. Div. 104, 48 N. Y. Supp. 1046, affirmed 163 N. Y. 183, 57 N. E. 312.

[2] It is claimed by the appellant that the trust is void: (a) For want of defined or determinable objects and purposes; and (b) for want of ascertainable beneficiaries. So far as the latter claim is concerned, it is rendered untenable by chapter 701 of the Laws of 1893

(amended by chapter 291, Laws of 1901), which was in force at the time of the testator's death. This statute provides that no gift "to religious, educational, charitable or benevolent uses" otherwise valid shall be deemed invalid by reason of the indefiniteness or uncertainty of the beneficiaries, that the Supreme Court shall have control over such gifts, and it shall be the duty of the Attorney General to represent the beneficiaries and to enforce such trust by proper proceedings. The effect of this statute was discussed at length in Matter of Shattuck, 193 N. Y. 446, 86 N. E. 455, upon which the appellant chiefly relies. There the gift was to the trustee to pay the income over "to religious, educational or eleemosynary institutions as in his judgment shall seem advisable." It was held that the statute was intended to apply only to public, charitable gifts, and not to gifts for the benefit of private institutions or individuals, and, since the court could not prevent the trustee from paying over the income to private schools organized for profit, if he chose so to do, the trust did not come within the protection of the statute and was void for uncertainty. Chase, J., who delivered the opinion, said:

"The act of 1893 doubtless saves a trust from being invalid because the beneficiaries are indefinite and uncertain, but a trust may be so indefinite and uncertain in its purposes as distingushed from its beneficiaries as to be impracticable, if not impossible for the courts to administer."

In the present case it may be conceded that the trust is void for uncertainty unless it is protected by the statute, and the question is whether the purposes of the trust are ascertainable and come within the terms of the statute. The facts developed upon the trial clearly indicate the purposes which the testator had in mind in creating the trust. He was, at the time of his death, and for some time prior thereto had been, interested in philanthropic work, and, soon after the will—which he drew himself—was executed, he began developing his Bible class into a social or university settlement afterwards called "Gordon House." He paid the bulk of its expenses and after his death the trustee applied the trust income to the support of that institution, which was then incorporated. He and his sons also made it substantial contributions from their own funds—purchasinng a lot, erecting a large building thereon especially designed for its use, and for which they charged no rent. I do not believe it can be seriously questioned but what the purposes which the testator had in mind in creating the trust were precisely those for which Gordon House was formed, and which the trustee has carried out. The object of the testator in creating the trust was a laudable one, and it is incumbent upon the court to sustain the same if possible. I am of the opinion that, under a fair construction of the language used by the testator, it can be done. It is somewhat difficult to describe what is known as "settlement work"; but the language which the testator used in defining the purposes of the trust conveys, in a general way, the idea sought to be accomplished by such work. The maintenance of a clubhouse or clubrooms for the social resort of young men and boys does not necessarily imply this, and, if the testator had confined himself to this description, the objections of the appellant might be well founded. But he went fur-

ther than that, by directing that the income might be implied to the purposes of *similar work, social or educational,* and this indicates as clearly as anything can that the club house or rooms were to be used not only as a social resort, but for social or educational work. This, I think, sufficiently defines the object of the trust.

In this connection the language of Mr. Justice Miller in Manley v. Fiske, 139 App. Div. 665, 124 N. Y. Supp. 149, is quite applicable, where he said:

"Here, it must be assumed that the testator intended a valid disposition of his property. \* \* \* It is not to be supposed that he intended the money to be paid over to unincorporated societies, and of course that could not be permitted. \* \* \* That purpose may be accomplished through the medium of any incorporated society having that for its object. The purpose is sufficiently indicated to enable the court to control the action of the trustees, and it is made the duty of the Attorney General to see that the trust is properly administered."

If the object of the trust in the present case were settlement work, then it was a charitable or benevolent use within the meaning of the statute. Such work does not cease to be benevolent because nominal fees are or may be charged. It follows that, if this is the correct meaning of the language used by the testator, the purposes are defined with sufficient certainty and are included among those enumerated in the statute, so that the trust cannot be invalidated by any uncertainty as to the beneficiaries.

[3] But whether or not the trust be protected by the statute, I think the trial court was right in holding that the appellant cannot now be heard to assert its invalidity. When the will was probated, the doubtful character of the trust clause under consideration was well known to her. The only other heir at law and next of kin desired to carry out the wishes of the testator. The appellant receives an annuity of $1,500 under the testator's will. Doubtless appreciating his kindness in so amply providing for her, she also manifested her desire to carry out his wishes as to the trust, and to that end signed the agreement that it should be carried out, and executed quitclaim deeds at various times so that the real estate falling within the trust could be sold. It is claimed that she was induced to relinquish her rights by fraud; but the court did not so find, and the evidence utterly fails to substantiate this claim. Indeed, her own letter shows that the reason why she is now contesting the validity of the trust is because she has changed her mind. If the trust is void, then Theodore B. Starr committed a devastavit of the estate in paying the income for nearly six years to Gordon House. Having made these payments, relying upon the declaration of the appellant, and at her request as expressed in the agreement, she is now estopped from making any claim to such income, and I think, if she is estopped as to the income, she is likewise estopped as to the corpus. Starr had as much right to his share in the trust property as did the appellant. The relinquishment of her rights in the property was, upon its face, final and irrevocable, and he, relying upon this, also gave up all his rights in the same property. He changed his position. It is no answer to this suggestion that his estate can now take the equivalent of his share in the trust property.

If her declaration had been what she now claims, revocable at will, it is by no means certain that he would have been willing in that case to devote the property which he shares in common with her to the execution of a trust which she could terminate at any time. Not only this, but, if her claim be correct, then she became at the death of the testator entitled to a share in the trust propery which she could dispose of as she pleased. The practical effect of her declaration and the construction put upon it for several years was to give this share to the trustee upon a valid charitable trust in accordance with the wishes of the testator, and the beneficiaries of this trust are now in court, represented by the Attorney General.

In this respect the case resembles somewhat Dunlap v. Gill, 23 Misc. Rep. 418, 51 N. Y. Supp. 265, affirmed 39 App. Div. 638, 57 N. Y. Supp. 1137. There, the testatrix devised certain property to one Mary Ely, otherwise called Mother Jerome, stating her purpose to be to devote the same to a hospital maintained by the order of which Mother Jerome was a member, but expressly saying she did not desire or attempt to charge the premises with a trust. Mother Jerome died intestate, having treated the property as belonging to the hospital. After her death, her heirs claimed title to the property and sought to partition it. It was held they were estopped from claiming title by the acts of Mother Jerome; the court saying:

"They claim that she had the absolute right to dispose of the property as she pleased, and so she was at liberty to work an estoppel against herself and equally against them. * * * Although not in form creating a trust, the will was so construed for over 24 years by the devisee, and practical effect was given to it by her and the assumed beneficiaries thereunder who were induced thereby to alter their position irrevocably."

So here, I do not think a court of equity is bound to recognize the appellant's claim.

"In a struggle between the heirs or trustees whom the testator obviously did not intend to benefit and a charity which he confessedly designed to endow, a court of equity will lend its aid to the extent of its legitimate power to uphold the devise and to effectuate the laudable and meritorious purpose of the testator." McCartee v. Orphan Asylum So., 9 Cow. 437, 18 Am. Dec. 516, quoted with approval in Amherst College v. Ritch, supra.

In Steinway v. Steinway, supra, an heir at law had joined with the other heirs of a testator in an agreement authorizing the executors to dispose of the estate, in accordance with the intention of the testator, as expressed in the will. He subsequently brought an action to set aside as invalid a trust created by the will, and it was held that he was not in a position to maintain the action; this court saying:

"It is altogether immaterial whether the preclusion of the plaintiff from maintaining the action is called an estoppel or anything else. The point is that, with all that he has done and the consequences of all that he has done, he has no place in a court of equity to attempt to undo by this action that to which he has bound himself and induced others to become bound. There is no question of a supreme public policy involved. The courts will declare unlawful suspensions of the absolute ownership of personal property to be void whenever their action is properly invoked; but they will not entertain suits merely to defeat family arrangements and agreements at the invitation of a person who has reaped the benefit of such an arrangement, has solemnly abandoned his right to make a contest, and by his acts has put others in a

position in which injustice and wrong would result to them if the agreed settlement were to be disturbed or interfered with."

In Williams v. Whittell, 69 App. Div. 340, 74 N. Y. Supp. 820, a decedent left a letter written by her as her will, in which she stated that she gave her husband $500. Her estate amounted to about $17,-000. The husband read the letter and then entered into an agreement under seal with his children to carry the letter into effect as if it were a valid will and to sign any papers that might be necessary for the purpose. After signing the agreement, the husband renounced his right to letters of administration, which were issued to the defendant Whittell. He administered the estate in accordance with the letter of the decedent, paying the husband something on account of his gift of $500, and paying one beneficiary a much larger sum, in reliance upon the agreement, than she would have been entitled to under the statutes of distribution. The amount received by the husband was considerably less than his statutory share. The administrator, in preparing his accounts for final settlement, requested an assignment from the husband in order to carry out the agreement. This the husband refused to give, and brought an action to set aside the agreement, on the ground that it was without consideration, procured by fraud, and was not a valid disposition of property. It was held that the agreement was not procured by fraud, and the plaintiff was not in a position to question its validity; the court saying:

"There was not mere silence or omission to speak, or to protest for more than a year, but a series of solemn, overt acts all in furtherance of the agreement, which the plaintiff would not repudiate. I think that the plaintiff was estopped."

So, in the present case, the declaration signed by the appellant and the subsequent conduct of the parties may not have amounted to a contract, a gift, or even a technical estoppel; but, once having solemnly abandoned her rights, after all that has been done, she had no standing in a court of equity to defeat the wishes of the testator and enrich herself at the expense of a deserving charity.

The interlocutory judgment appealed from, therefore, is affirmed, with costs.

INGRAHAM, P. J., and MILLER, J., concur. LAUGHLIN and DOWLING, JJ., dissent.