(Surrogate's Court, Westchester County.   February, 1915.)

PERPETUITIES ⪘8—TESTAMENTARY TRUST—VALIDITY—"CHARITABLE TRUST."
  Where testatrix gave to her executors a certain sum in trust, the income to be used for hiring a house to be maintained and used as a "Home for Refined, Educated, Protestant, Gentlewomen—whose means are small —and whose home is made unhappy, by having to live with relatives who think them in the way," but the will showed that by such provision testatrix intended to provide a home for six relatives, naming them, and their descendants, naming them, and six friends, naming them, forever, to the exclusion of all others, the trust attempted to be created, not being a "charitable trust," within Personal Property Law (Consol. Laws, c. 41) §§ 11, 12, was void; and hence, as to the corpus of the attempted trust, testatrix died intestate.

  [Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 57–66; Dec. Dig. ⪘8.

  For other definitions, see Words and Phrases, First and Second Series, Charitable Trust.]

Proceedings on the probate of a paper purporting to be the last will and testament of Annie Coe MacDowell, deceased. Decreed according to opinion.

Remsen & Parsons, of New York City, for petitioner.

Reevs & Scrugham, of Yonkers (Graham Witschief, of Newburgh, and William W. Scrugham, of Yonkers, of counsel), for contestant.

SAWYER, S.   This is an application for the construction of a will. This court is asked to determine the validity of a certain trust mentioned therein.

The testatrix, Annie Coe MacDowell, died January 20, 1914, leaving her sister, Jessie M. Gibson, as her only next of kin, and leaving a last will and testament, which was duly admitted to probate by a decree of this court on July 27, 1914, reserving, however, for future determina-

tion the question of construction. The provisions of the will to be construed are as follows:

[Page 1] I, Annie Coe MacDowell—being of sound mind and memory, & considering the uncertainty of this life, do make, publish and declare this to be my last will and testament—as follows—I give and bequeath to my executor and Trustee, here in after named; all my portion of my father's estate, now held in trust for me, under his last will; and which portion I have under his last Will, the right to bequeath, and in addition, all my own money, which is now in Bond & Mortgages, & Five Savings Banks—amounting to about Ten Thousand Dollars—To be well invested, and the Income derived from both, to be used for hireing a House, and maintaining same, in a respectable neighborhood, within the city limits of Yonkers, New York—To be used as a Home for Refined, Educated, *Protestant*, Gentlewomen—whose means are small—and whose home is made unhappy, by having to live with Relatives, who think them in the way.

[Page 2] This Home to be called the "Mary Randol Memorial Home"—I wish the preference of being an Inmate of this Home, to be given to my Sister Jessie, and my Cousins, and their lineal descendants Forever. Namely—Mrs. Philip H. Remington—Miss Elizabeth Remington, of Windsor, Conn.—Miss Bessie Terhune, Mr. Richard Morrell—Passaic, New Jersey—Mr. Harry Masters, Passaic, New Jersey—Mr. Enos Randol Hyatt, 277 Broadway, N. Y. The same privilege is extended to my friends—Namely—Miss Mary A. Hall, Port Richmond, Miss Adelaide Hall, Port Richmond—Staten Island—Miss Inlia Frances Bangs—Mrs. Enos Randol Hyatt—Miss Annie E. Scott, Washington, Iowa—Rev. Mrs. George W. Huntington, Newburgh, N. Y. To come and go with perfect freedom, and not confined to rules. All the Inmates of this Home are to pay Board, each week they are there—with their small means—The price not to exceed—Seven Dollars per week—Towards paying the running expenses of the house—which will have a Housekeeper at the head—

[Page 3] My hope is that my sister Jessie, will leave her half share of the estate, to this Home—in Memory of our dear Mother—Mary Randol—I ask Mr. James G. Wentz, and Mr. Enos Randol Hyatt—to take an interest in this Home—to see that it is properly conducted, and I appoint the Westchester Trust Company of Yonkers—N. Y.—as my Executor, and Trustee—to manage this estate, and pay the Interest, to a Committee of Seven Ladies & Gentlemen, to be chosen by The Board of Vestrymen of St. Johns Episcopal Church of Yonkers—N. Y.—for carrying on this Home—To be established in perpetuity. I hereby make the following bequests—To my Sister Jessie—I give the sum of One Dollar—as she has money of her own, independent of the other half of the estate, our father, Mr. David MacDowell, left us—As a small token of my love for her, I give her my For-get-me not Ring, Gold Locket, containing our Mother and Father's pictures—Amethyst Necklace Aunt Frank's Pearl Ring (with small diamond in the center—) * * *

[Page 6] All my Furniture, Portraits, Pictures—Clocks, Ornaments, China, Glass—Solid Silver, and Plated Silver, both large and small pieces—Table Linen—Bedding—Pillows, Kitchen Utensils—any of my things, that are for house-keeping—I wish to be given toward furnishing the Mary Randol Home—As soon as practicable, after the probate of this my last Will—Should any one wish to leave a Legacy to this Home—I would be glad to have them do so—and should the home be large enough to accommodate others than those mentioned in this Will—I wish the Committee of Seven Ladies and Gentlemen from

[Page 7] St. Johns Church of Yonkers—N. Y.—to admit those Refined Gentlewomen who they judge most worthy. * * *

The trust attempted to be created is not limited by lives. It is in perpetuity. It is void unless it is a religious, educational, charitable, or benevolent trust. Personal Property Law, §§ 11, 12; Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568. It requires no argument to show that it is neither a religious nor an educational trust. If any trust was created

by said will, it is either a charitable or a benevolent one. What, then, is a charitable or a benevolent trust within the meaning of the statute? This question has been duly considered at length by the Court of Appeals in Matter of Shattuck, 193 N. Y. 446, 86 N. E. 455. The following is a portion of said opinion which defines a charitable trust:

"The meaning of a charitable use or purpose in England is stated by Tudor on Charities and Mortmain (4th Ed.) 37, as follows: 'In the first place, it may be laid down as a universal rule that the law recognizes no purpose as charitable unless it is of a public character; that is to say, a purpose must, in order to be charitable, be directed to the benefit of the community or a section of the community. The distinction between a public purpose and one which is not public is often fine. The principle deducible from the cases seems, however, to be as follows: If the intention of the donor is merely to benefit specific individuals, the gift is not charitable, even though the motive of the gift may be to relieve their poverty or accomplish some other purpose in reference to those particular individuals which would be charitable if not so confined; on the other hand, if the donor's object is to accomplish the abstract purpose of relieving poverty, advancing education or religion or other purpose charitable within the meaning of the statute of Elizabeth without reference to any particular individuals and without giving any particular individuals the right to claim the funds, the gift is charitable.' It is defined by Pomeroy in his Equity Jurisprudence (2d Ed., vol. 2, § 1019) as follows: 'In order that a trust may be charitable the gift must be for the benefit of such an indefinite *class* of persons that the charity is really a public and not a mere private benefaction.' In Sherwood v. American Bible Society, *40 N. Y. 561, this court say: 'To constitute a charity the use must be public in its nature.' In Smith v. Havens Relief Fund Society, 44 Misc. Rep. 594–608, 90 N. Y. Supp. 168, 175, referring to the law relating to charitable uses, it is said: 'It requires that the use shall be public, that the benefit shall be intended not for individuals as such but as representatives of a class; that the announcement of the altruistic aim shall not be a cover for the bestowal of a private bounty.' Affirmed, and opinion adopted and approved, 118 App. Div. 678, 103 N. Y. Supp. 770, affirmed without opinion 190 N. Y. 557, 83 N. E. 1132. In Attorney General v. Soule, 28 Mich. 153, a will directed the setting apart of $10,000 to be expended, according to the directions of the executors, 'for the establishment of a school at Montrose for the education of children.' It was held that the provision was so uncertain and indefinite as not to bind the trustees to an application of the fund to *public charity* or even perhaps to charity at all as recognized in courts of equity, but clothed them with a discretion broad enough to permit of their applying the fund to a private school. In Stratton v. Physio-Medical College, 149 Mass. 505, 21 N. E. 874, 5 L. R. A. 33, 14 Am. St. Rep. 442, the will gave one-fourth of the net income of the residue of testator's property to the defendant to be used for the promotion of the medical art as favored and believed in by the testator during his lifetime and in support of that institution as the trustees thereof should from time to time determine. It appeared that the supposed corporation in the mind of the testator was neither free nor a public school, but a private pecuniary enterprise. It was held that such an enterprise is not a public charity even if indirectly it serves charitable ends. In Haynes v. Carr, 70 N. H. 463, 49 Atl. 638, the gift of the income of the trust there considered was given 'for the benefit of the poor and destitute in said state of New Hampshire and for charitable and educational *purposes* therein.' Although the trust was sustained as for *charitable purposes*, the court say: 'It is undoubtedly the law in most states that where property is given to trustees with power to apply it either to uses which are or those which are not within the classes included in charities the whole must fail so far as the application of the peculiar doctrines of charitable uses is concerned.' Every charitable gift must be actually dispensed by some individual and ultimately substantially every charitable fund must be applied to the relief of individual need, but the trust cannot for the reasons stated be made for individual beneficiaries as such. The general purpose of the trust must be the well-being of humanity or some specified but indefinite class or part

thereof. Fowler, in his work on Charitable Uses, says (page 106): 'As we have no statute defining what are religious, educational and charitable uses and this statute (act of 1893) refers to none other than such as may be so classed, the courts must now determine what gifts are within the statute.' In view of the quite universal rule that charitable uses and public uses are synonymous, and the title of the act, which is 'An act to regulate gifts for charitable purposes,' we repeat that the Legislature intended to preserve charitable gifts made in trust to uncertain and indefinite beneficiaries, but did not intend to include in the purpose of the act gifts to private institutions or individuals."

Is the so-called trust then, attempted to be created by the will in question, a charitable one in the broad sense of the statute, as above defined, or is it one for the benefit of particular individuals? If the testatrix had said in the will that the home she desired to found should "be used as a home for refined, educated, Protestant gentlewomen whose means are small and whose home is made unhappy, by having to live with relatives who think them in the way" and then had stopped, the so-called trust would have been a charitable one within the statute. But she goes on to say at page 2 of the will, as follows:

"I wish the preference of being an inmate of this home, to be given to my sister Jessie, and my cousins, and their lineal descendants forever, namely: Mrs. Philip H. Remington, Miss Elizabeth Remington, of Windsor, Conn.; Miss Bessie Terhune, Mr. Richard Morrell, Passaic, New Jersey; Mr. Harry Masters, Passaic, New Jersey; Mr. Enos Randol Hyatt, 277 Broadway, N. Y. The same privilege is extended to my friends, namely: Miss Mary A. Hall, Port Richmond; Miss Adelaide Hall, Port Richmond, Staten Island; Miss ·Inlia Frances Bangs, Mrs. Enos Randol Hyatt, Miss Annie E. Scott, Washington, Iowa; Rev. Mrs. George W. Huntington, Newburgh, N. Y."

The last clause of the will referred to shows conclusively to my mind that the testatrix intended to prefer these six relatives and their descendants. She also intended to prefer her six friends named. Her intention was to provide a home for these relations and their descendants and her friends, to the exclusion of all others. This, then, would mean that the income of the so-called trust would be devoted, in part, at least, if not entirely, to a private use. This being so, the entire gift would be invalid. In Matter of Shattuck, supra, the court, at page 456 of 193 N. Y., at page 458 of 86 N. E., said as follows:

"The possible devotion of the income of said trust in whole or in part to private use necessarily affects the entire gift and requires that the same shall be held invalid."

The argument of the learned attorney for the contestant advanced in his brief is reasonable, and his conclusion is logical, and to my mind meets the situation exactly. The portion of his brief referred to reads as follows:

"If Miss MacDowell had merely said that the home which she wished to found should be used as a home for 'refined, educated Protestant gentlewomen whose means are small and whose home is made unhappy, by having to live with relatives who think them in the way,' and then stopped, the trust would undoubtedly have been a charitable one in the broad sense contemplated by the statute. But she did not stop there. She goes on to say, 'l wish the preference of being an inmate of this home to be given to my sister Jessie and my cousins and their lineal descendants,' naming specifically six persons, three of them men; and she continues, 'The same privilege is extended to my friends,' naming specifically six other persons. These persons so specific-

ally and definitely named are to be given preference in the enjoyment of the benefits of the trust over the general class of persons defined as 'refined, educated, Protestant gentlewomen whose means are small,' etc. They have a prior right to become inmates of the contemplated home. Such right cannot be denied them by the trustee. The trustee is given no discretion to exclude the specified persons from the benefits of the trust if they demand it. It is only in case the home, by receiving from other persons legacies which Miss MacDowell in her will solicits, should be large enough to accommodate others than those persons particularly mentioned by name in her will that the testatrix has empowered the advisory committee of ladies and gentlemen to admit those refined gentlewomen who they judge most worthy (pages 6 and 7 of will). The testatrix did not contemplate that the persons specifically mentioned should belong to the general class of beneficiaries which she had defined as 'refined, educated, Protestant gentlewomen whose means are small.' This is obvious from that fact that she has included among the specified persons, three who are men, and also her sister, who, in another part of the will (page 3), she says 'has money of her own' in a sufficient amount apparently to justify, in the mind of the testatrix, the gift to her said sister of $1 only. The testatrix intended that these specified persons should be the beneficiaries of the trust which she attempted to create, independent of the fact that they might not come within the class of 'refined, educated, Protestant gentlewomen whose means are small,' and possibly to the exclusion of that class entirely. The trustee, therefore, could not exclude them from the benefit of the trust because they might not come within that class. The primary object of the trust attempted to be created is, very obviously, to benefit the persons specifically named, and only secondarily to benefit the class of 'refined, educated, Protestant gentlewomen whose means are small.' There are, and there always will be, since the right descends, certain specified individuals who have the right to claim the benefit of the attempted trust. Such trust, therefore, is not public and for the general benefit of humanity, and the Shattuck Case, above cited, says it must be, if it is to be saved by the statute as a charitable trust. It is a private trust for the benefit of particular individuals, and is therefore not charitable in the broad sense required to bring it within the protection of the statute validating charitable trusts for indefinite and uncertain beneficiaries. It is not saved by that statute from the effect of the statutes against perpetuities, and as it plainly contravenes the last-mentioned statutes, it is absolutely void."

Clearly there is no charitable trust created under the will. The one attempted to be created is absolutely void.

The learned counsel for the proponent claims that the general purpose of the testatrix was to benefit a specified, but indefinite, class of the public, with a preference to certain persons and their descendants, not as individuals, but only as possible members of the specified class. He also contends that "a charity which is otherwise public is not deprived of that character by directing that in the administration of the charity a preference be given among eligible persons," and cites the following cases in support of his contention: Perin v. Carey, 65 U. S. (24 How.) 465, 16 L. Ed. 701; Dexter v. Harvard College, 176 Mass. 195, 57 N. E. 371; Darcy v. Kelley, 153 Mass. 433, 26 N. E. 1110.

I have been unable to find any cases in this jurisdiction supporting this contention; but, assuming that the doctrine which he sets forth is correct, it certainly would not apply in this case, as the specified persons who are given a preference could not be included as eligibles in the general class. The testatrix designates six in the preferred class specifically by name, and their descendants, placing no limitation whatever on their right to a preference. In the case of one of them, at

least, the sister Jessie is mentioned in the will as one "with means." She certainly would not be eligible to the general class as one having "small means." There is nothing to show that those mentioned in the preferred class are all "Protestants." Some may be Catholics, or belong to other denominations. There are three men distinctly named in the preferred class, and they certainly cannot qualify in the general class as "gentlewomen." So that, even if the contention of the learned attorney for the proponent is correct, the so-called preferred class certainly would not be eligible in the so-called general class.

A decree should be made declaring void the trust attempted to be created by the testatrix, and adjudging that she died intestate as to the funds which she endeavored to bequeath to the Westchester Trust Company as trustee.

Decreed accordingly.