(170 App. Div. 245) ,

In re MacDOWELL'S WILL.

(Supreme Court, Appellate Division, Second Department. December 17, 1915.)

1. WILLS &⇒55—CONTEST—EVIDENCE—SUFFICIENCY.

In a will contest, evidence *held* not to show the testatrix's want of mental capacity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161 ; Dec. Dig. &⇒55.]

2. PERPETUITIES &⇒8 — TESTAMENTARY TRUST — VALIDITY — "CHARITABLE TRUST."

Where testatrix gave to her executors a sum in trust, the income to be used for hiring a house to be maintained and used in perpetuity as a home for "refined, educated, Protestant gentlewomen whose means are small and whose home is made unhappy by having to live with relatives who think them in the way," but the will showed that by such provision testatrix intended to provide a home for six relatives, naming them, and their descendants, forever, to the exclusion of all others, the trust was not a "charitable trust," and so was void as a perpetuity.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 57–66 ; Dec. Dig. &⇒8.

For other definitions, see Words and Phrases, First and Second Series, Charitable Trust.]

Mills and Rich, JJ., dissenting in part.

Appeal from Surrogate's Court, Westchester County.

In the matter of the probate of a paper purporting to be the last will and testament of Annie Coe MacDowell, deceased. From a decree of the surrogate admitting the will to probate, contestant, a sister of deceased, appeals. From the further decree (89 Misc. Rep. 323, 153 N. Y. Supp. 653), adjudging invalid a trust attempted to be created, the executor and the Attorney General appeal. Affirmed.

By the writing admitted to probate, the decedent made the following disposition :

"I give and bequeath to my Executor and Trustee, here in after named ; all my portion of my Fathers Estate, now held in trust for me, under his last Will ; and which portion I have under his last Will, the right to bequeath, and in addition, all my own money, which is now in Bond & Mortgages, & Five Savings Banks—amounting to about Ten Thousand Dollars—To be well invested, and the Income derived from both, to be used for hireing a House, and maintaining same, in a respectable neighborhood, within the City limits of Yonkers, New York—to be used as a Home for Refined, Educated, Gentlewomen—whose means are small—and whose home is made unhappy, by having to live with Relatives, who think them in the way—

"This Home to be called the 'Mary Randol, Memorial Home'—I wish the preference of being an Inmate of this Home, to be given to my Sister Jessie, and my Cousins, and their lineal descendants Forever.

"Namely—Mrs. Philip H. Remington—Miss Elizabeth Remington, of Windsor—Conn Miss Bessie Terhune Mr. Richard Morrell—Passaic, New Jersey—Mr. Harry Masters—Passaic—New Jersey—Mr. Enos Randol Hyatt—277 Broadway—N. Y.—The same privilege is extended to my Friends—Namely—Miss Mary A. Hall—Port Richmond Miss Adelaide Hall—Port Richmond—Staten Island Miss Inlia Frances Bangs Mrs. Enos Randol Hyatt—Miss Annie E. Scott—Washington—Iowa Rev. Mrs. George W. Huntington—Newburgh, N. Y. To come and go with perfect freedom, and not confined to rules.

"All the Inmates of this Home, are to pay board, each week they are there —with their small means—The price not to exceed—Seven Dollars per week —Towards paying the running expenses of the house—which will have a Housekeeper at the head—

"My hope is that my Sister Jessie, will leave her half share of the Estate, to this Home—in memory of our dear Mother—Mary Randol—

"I ask Mr. James G. Wentz, and Mr. Enos Randol Hyatt—to take an interest in this Home—to see that it is properly conducted, and I appoint the Westchester Trust Company of Yonkers—N. Y.—as my Executor, and Trustee— to manage this Estate, and pay the Interest, to a committee of Seven Ladies & Gentlemen, to be chosen by the Board of Vestrymen of St. Johns Episcopal Church of Yonkers—N. Y.—for carrying on this Home—To be established in perpetuity."

After certain private bequests, she mentioned furniture, pictures, and other articles for housekeeping, which the testatrix declared:

"I wish to be given towards furnishing the Mary Randol Home—As soon as practicable, after the probate of this my last Will—Should anyone wish to leave a Legacy to this Home—I would be glad to have them do so—and should the Home be large enough to accommodate others than those mentioned in this Will—I wish the Committee of Seven Ladies and Gentlemen from St. Johns Church of Yonkers—N. Y.—to admit those Refined Gentlewomen who they judge most worthy."

The surrogate held the foregoing trust provision for the "Mary Randol Memorial Home" invalid and void.

Argued before CARR, STAPLETON, MILLS, RICH, and PUTNAM, JJ.

Daniel S. Remsen, of New York City, for proponent.

William W. Scrugham, of Yonkers (Graham Witschief, of Newburgh, on the brief), for contestant.

Robert P. Beyer, Deputy Atty. Gen., for the State.

PUTNAM, J. The appeal from the decree admitting to probate was taken by the contestant, the sister of the decedent; and the executor named in the will and the Attorney General have both appealed from the surrogate's other decree, construing the will and declaring the alleged trust invalid. Decedent died January 20, 1914, leaving an estate of about $63,000. She executed, on July 5, 1904, the paper writing which has been admitted as her last will.

On appeal from the decree admitting the will to probate the appellant, the sister of the testatrix, first contends here that the writing was not signed at the end thereof, and therefore was not duly executed as a will. On examination of the instrument, which was entirely written by the testatrix, we think the learned surrogate correctly sustained the execution of the will, under authority of Younger v. Duffie, 94 N. Y. 535, 46 Am. Rep. 156.

[1] This appellant also contests the testamentary capacity of the deceased. At her death in 1914 the testatrix was a maiden lady of about 70 years of age. This will was made nearly 10 years earlier. She had lived with her father and sister until about 1900, when the sister married, and thereafter the testatrix resided most of the time with her sister, with intervals in boarding houses. At her father's death, his estate was practically divided between his two daughters. After 1896,

the testatrix had several illnesses, during which for a time she was melancholy and would remain speechless. The first attack was from January 7, 1896, to July, 1896; the second from July 26, 1900, to July 5, 1901; the third from May 1, 1907, to December 24, 1910; the fourth from July 10, 1912, to March 15, 1913; and the fifth and final attack from November 26, 1913, to her death, January 20, 1914. It thus appears that the will in question was executed about midway of the six-year interval between the second and third of these attacks.

In answer to hypothetical questions embodying the facts as to her conduct during those attacks, as contestant claimed, four physicians, no one of whom was an expert alienist, each testified that in his opinion she was suffering from depressive melancholia and incapable of making a will. The theory of the contestant is that through decedent's mental disease she became obsessed with the idea that she was friendless, that she was not welcome at her sister's, where indeed she was welcome, and that out of that obsession she conceived the notion of founding a home, which in the trust provision of the will she attempted to do. There was evidence showing decedent's expressions indicating that she held such views.

Proponent introduced no medical evidence, but relied upon the evidence showing her to have been rational at the execution of the will; that she drew the will herself, and that it shows very exact understanding of the condition of her property and its source, and of her relations to her relatives and friends, mentioning them by name; that she attended to her own business until long after making the will, settling her affairs with the trustee of the will of her father, who died about 1900, and a receipt given by her June 29, 1905, upon such settlement, was put in evidence. That trustee testified that her talk and dealings with him at all times were rational. The vice president and acting official of her bank in Yonkers testified to her dealings at the bank, and that her acts always impressed him as rational.

The husband of the contestant testified that testatrix lived most of the time with them after the spring of 1901; that she often consulted him about her business affairs. It is to be noted that there is nothing in the testimony of this witness to indicate any want of testamentary capacity on the part of the testatrix. Various paper writings by her, such as checks, memoranda of securities received from her father's estate, letters and other writings in her handwriting, were put in evidence, all indicating good mental condition. So far as these papers are printed in the record, we fail to find in them anything indicative of want of ordinary mental capacity. After her death, her sister and a friend found many little packages among her effects, each containing some trivial object wrapped up in a paper.

Contestant's counsel contends that the scheme of the will itself, namely, the attempt to found such a home, indicates mental unsoundness. We cannot agree with this view. The idea seems not unnatural for an old maiden lady to entertain, whose only sister had married late in life and left her alone. As human nature goes, it was not strange that she should look upon herself thereafter as neglected, supplanted, and left unconsidered. Therefore the decision of the surro-

gate, admitting the paper writing to probate as her last will and testament, cannot here be held to have been against the greater weight of the evidence, and therefore it should be affirmed.

The other appeal, namely, that from the decree construing the trust provision of the will and holding it to be invalid, presents more difficulties for our determination. The learned surrogate held that the trust disposition was void, for the reason that the provision therein purporting to create preferences for the testatrix's named relatives and friends, and their lineal descendants, as beneficiaries of the home attempted to be created, made such trust, in part at least, one for a private use and not for a public charity. Upon this point, in his opinion, he wrote:

"If the testatrix had said in the will that the home she desired to found should 'be used as a home for refined, educated, Protestant, gentlewomen whose means are small and whose home is made unhappy, by having to live with relatives, who think them in the way; and then had stopped, the so-called trust would have been a charitable one within the statute. * * * The last clause of the will referred to [meaning the clause as to preferences] shows conclusively! to my mind that the testatrix intended to prefer these six relatives and their descendants. She also intended to prefer her six friends named. Her intention was to provide a home for these relations and their descendants and her friends, to the exclusion of all others. This, then, would mean that the income of the so-called trust would be devoted in part, at least, if not entirely, to a private use. This being so, the entire gift would be invalid."

[2] We agree with the learned surrogate that the scheme of the proposed home is against the rule forbidding perpetuities, unless it may stand as a charity. Here, however, the intended beneficiaries are not the poor and needy, but persons described of relatively small means, "whose home is made unhappy, by having to live with relatives, who think them in the way." How is that inhospitable and rude family attitude to be shown? Yet to this vague plan the income of $63,000 is devoted. But the beneficial scheme is not for the public, or for those of a locality. It is tied by many preferences, not to the descendants of the founder, but to a considerable outside field. The testatrix preferred her sister, and six of her cousins (of whom three are men), and their lineal descendants forever, and extended the same privilege to six other women named, making in all thirteen stocks, with their descendants. Thus the preferences may readily absorb the purposes of the foundation, leaving nothing from this moderate income for outside aid. And this preference is not to the needy relative, friend, or their descendants, but any of such description whose means are "relatively" small. It is not to relieve poverty or sickness. It aims at a perpetual private foundation, limited to the issue of named individuals. The disposition, therefore, has not the public purpose which the law and policy of this state require. Speaking of our present statute, the Court of Appeals says:

"Gifts for the benefit of private institutions or individuals were not intended to be included within its provisions." Matter of Shattuck, 193 N. Y. 446, 452, 86 N. E. 455, 456.

I advise that the surrogate's decree of July 17, 1914, admitting the will to probate, and his further decree of March 26, 1915, adjudg-

ing invalid the trust attempted to be created under said will, be severally affirmed, with a single bill of costs to the executor, and one bill of costs to the contestant, payable out of the estate.

CARR and STAPLETON, JJ., concur.

MILLS, J. (dissenting). I find myself unable to agree with the views expressed in the majority opinion as to the appeal from the decree construing the trust clause. As it seems to me, the controlling point in those views, as therein expressed, is that the provision in such clause, as to preferences, must be construed as preferring the 13 individuals mentioned, and their lineal descendants, absolutely, without any specified qualification upon their part, save that of being persons whose means are relatively small. At least such opinion quotes, with apparent approval, an excerpt to that effect from the opinion of the learned surrogate, and further declares:

"Thus the preferences may readily absorb the purposes of the foundation, leaving nothing from this moderate income for outside aid."

The gist of this view appears to me to be that the persons of the preferred class are not required to have the general qualifications imposed by the trust clause upon other beneficiaries of the trust. I disagree entirely with the learned surrogate and with the majority opinion as to the true construction of the preference clause. I think that it is to be construed as requiring the persons so preferred to have the qualifications previously specified for the general class of beneficiaries.

As to the sister Jessie, I see no inconsistency in the later statement of the will to the effect that she had means, because it would be no strange thing in our American life for such sister even to come to be without means or to have merely small means; and as to the three men mentioned, it must be noted that to the first general mention of the persons to be preferred the clause added the words "and their lineal descendants forever." It seems to me that as to the men the obvious meaning is that their female descendants of the general class are to be so preferred, not that they themselves are to be. It seems, at least to me, quite unnatural, and indeed forced, to construe the language of a person, whom we have held capable of making a will, to mean that three men should be entitled to become members of a home which she designed to create "for Refined, Educated, *Protestant,* Gentlewomen," if any other construction may possibly be had. I recall that in a most charming work of recent fiction, entitled "Old Lady Number Thirty-One," is to be found an instance of such male membership, but have never heard of any such in real life.

As to the apprehension expressed in the majority opinion that "the preferences may readily absorb the purposes of the foundation, leaving nothing from this moderate income for outside aid," I think that it is groundless. With the preference clause construed as I have above suggested, it may well be that in a given generation no one person of any of the 13 stocks mentioned will be able to qualify as a beneficiary. It is a familiar doctrine, which has had recent utterance by the Court

of Appeals in a similar case, that where such a challenged clause is susceptible of two constructions, one of which will sustain the provision as a valid public charity and the other of which will make it void, the former construction will be adopted.   Matter of Robinson, 203 N. Y. 380, at page 388, 96 N. E. 925, at page 927 (37 L. R. A. [N. S.] 1023).   The opinion of that court upon this point said:

"It is doubtless true that the paragraph of the will by which the trust is attempted to be created is susceptible of more than one construction but a construction which is fairly within the rules of law and that sustains the trust and devotes the fund included therein to purposes permitted by law and to the good of humanity should be preferred."   203 N. Y. 388, 96 N. E. 927 (37 L. R. A. [N. S.] 1023).

That the preference clause here, construed as I have above suggested, does not make the trust provision invalid, has been held in effect in several Massachusetts decisions, namely, Dexter v. Harvard College, 176 Mass. 192, 195, 57 N. E. 371, Kent v. Dunham, 142 Mass. 216, 7 N. E. 730, 56 Am. Rep. 667, and Darcy v. Kelley, 153 Mass. 433, 26 N. E. 1110.   It seems to me, moreover, that the same doctrine was in effect held by our Court of Appeals in Matter of Robinson, supra, because that court there upheld the validity of such a trust provision in a will, although that provision contained a preference clause of—

"persons who are elderly or disabled from work, and to persons who are Christians, of good moral character, members of one of the so-called evangelical churches, to wit, the Methodist, Baptist, Presbyterian, Congregational, Moravian, or Episcopal, and who are not addicted to the use of intoxicants or tobacco, nor to attendance at theatrical entertainments."   203 N. Y. 382, 389, 96 N. E. 926 (37 L. R. A. [N. S.] 1023).

The provision requiring the inmates to pay board not exceeding $7 a week "towards paying the running expenses of the house" does not prevent the home being regarded as a charitable institution.   Schloendorff v. New York Hospital, 211 N. Y. 125, at page 127, 105 N. E. 92, 52 L. R. A. (N. S.) 505, Ann. Cas. 1915C, 581; Starr v. Selleck, 145 App. Div. 869, 130 N. Y. Supp. 693, affirmed without opinion 205 N. Y. 545, 98 N. E. 1116.

I vote, therefore, that the decree of the Surrogate's Court, appealed from, which construed the will and held the trust clause invalid, be reversed, and that said preference provision in such clause be construed as herein indicated, and that the decree appealed from, which admitted the paper writing to probate as the last will of the decedent, be affirmed, without costs to either party.

RICH, J., concurs.