## CITY OF PHILADELPHIA v. PENNA. HOSPITAL.

APPEALS BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued March 25, 1890—Decided April 7, 1890.
[To be reported.]

1. While there are decisions which hold that a state may by contract divest itself of the right of taxation as to a particular subject, it is an improvident and dangerous exercise of power, and the intention thus to grant an irrevocable exemption from the imposition of taxes ought never to be evidenced by mere implication, but should be expressed in the clearest manner.

2. When, by statutory provision, the property of an existing charitable corporation is exempted from taxation so long as it shall be used for the purposes of the charity, "any law to the contrary notwithstanding," the clause quoted cannot be held to apply to subsequent legislation, but indicates simply that the intention expressed is not to be interfered with by other laws then in existence.

3. At all events, such a grant of exemption cannot bind the state, so as to prevent the subsequent imposition of taxation, unless made for a consideration; and, neither the fact that the property exempted is applied to charitable uses, in relief of the public, nor the fact that, subsequent to the statute, contributors have made large gifts to the charity, will furnish such consideration.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

Nos. 115, 116, 117, 118 July Term 1889, Sup., Ct.; court below, Nos. 273, 274, 275, 276 September Term 1888, C. P. No. 3.

To the numbers and term in the court below, the city of Philadelphia brought four actions of scire facias against " The Contributors to the Pennsylvania Hospital," upon municipal claims filed against four lots of ground belonging to the defendant for the laying of water pipes in front of said properties.

The defendant filed an affidavit and supplemental affidavit in each case, averring that the claim for laying water pipe was' a tax assessed against the defendant, and stating the following matter as a defence thereto.

2. That the said defendant was incorporated by an act of the general assembly of the province of Pennsylvania, passed May 11, 1751, entitled " An Act to encourage the establishing of a hospital for the relief of the sick poor of this province and for the reception and cure of lunaticks," [1 Sm. L. 208,] and it is one of the provisions of the said charter " that no general meeting of the said contributors, nor any person acting under them, shall employ any money or other estate, expressly given or added to the capital stock of the said hospital, in any other way than by applying its annual interest or rent towards the entertainment and care of the sick and distempered poor that shall be from time to time brought and placed therein, for the cure of their diseases, from any part of this province, without partiality or preference."

3. That by an act of assembly, approved March 19, 1845, entitled " An Act to exempt from taxation the estate of the Pennsylvania Hospital," P. L. 187, which is made part of this affidavit, it is enacted that its property and estate, real and personal, should be and remain free from the payment of taxes of any kind whatsoever, provided that nothing in said act should exempt from the assessment and payment of road and poor taxes, any part of the property of said Pennsylvania Hospital located in Blockley township.

4. That by the seventh section of the act of April 18, 1853, P. L. (1854) 834, it was enacted " that the estates and property, real and personal, belonging to the contributors to the Pennsylvania Hospital, shall be and remain free from the payment of taxes of any kind whatsoever, as long as the income from said estates and property is used for the relief of the sick and insane poor, any law to the contrary notwithstanding."

5. That the real estate, against which said claim for water-pipe or tax sued for is levied and assessed, is part of certain real estate formerly situated in Blockley township and which was acquired by the corporation defendant by deeds from various persons, all prior to April 18, 1853. Said corporation defendant is, therefore, by the express terms of the legislation above referred to, exempt from the payment of all taxation.

6. Defendant further avers that the real estate in question forms part of its capital investments, and the whole of the net income from the said real estate, as well as all the rent and

profit-producing property of the defendant, both real and personal, has been and is appropriated exclusively for the purposes specified in its act of incorporation, viz., the relief of the sick and insane poor; and neither the president nor any of the directors of the corporation get any salary or emolument of any kind for managing and superintending the affairs of the institution.

7. That the said corporation has no capital stock, and no profit nor other benefit or advantage is in any way derived by any of the contributors thereto from any moneys received by the corporation from any source; but, on the contrary, there is annually more money expended by the institution in carrying out the purposes of its incorporation than is received from all sources of its income, including the rents and profits from the real estate hereinbefore specifically mentioned, and this deficit is made up by annual contributions and donations made to it, from time to time.

8. That the said corporation is maintained by voluntary contributions from its members and others, and from the income derived from the capital accumulated from time to time by gift, devises, and bequests.

9. That no distinction is made in the reception of patients by the defendant, on the ground of sex or color, and the said corporation is a charitable trust, open to the public indefinitely, and conducted without a view to corporate or individual profit, and is an institution of purely public charity, founded, endowed, and maintained by public and private charity; and this defendant is therefore advised and believes that the real estate, hereinbefore specifically described, is exempt by law from the payment of each and all of the sums assessed against it for the taxes aforesaid.

Upon the filing of these affidavits, the plaintiff took rules for judgment for want of a sufficient affidavit of defence; and after argument, the court, without opinion filed, made the rules absolute, entering judgments for the plaintiff for the amounts of the claims.*  Thereupon the defendant took these appeals, specifying that the court erred:

---

* The judgments were not shown in the paper-books.

Arguments.

1. In entering judgment against the defendant.

2. In entering judgment for want of a sufficient affidavit of defence.

*Mr. A. Sydney Biddle*, for the appellant.

1. The acts of March 19, 1816, P. L. 240; March 19, 1845, P. L. 187, and April 18, 1853, P. L. (1854) 834, constitute separate and independent contracts between the state and the defendant, exempting the latter from taxation; and, having been accepted by the corporation, and acted on both by it and by charitable donors to it, no subsequent legislation, constitutional or otherwise, can impair the obligation of the contracts. The successive statutes passed in relation to this corporation, viz., the acts of May 11, 1751, 1 Sm. L. 208; April 11, 1793, 3 Sm. L. 117, and April 4, 1805, P. L. 263, and the later acts already mentioned, show that, although managed as a private institution, it is in a true sense a branch of the state government, chartered to perform a public service in relief of the state. In the performance of this service, it furnishes a consideration ample for the corresponding benefit of exemption from taxation.

2. A contract relieving a corporation from taxation is binding on the sovereignty making it: State Bank of Ohio v. Kroup, 16 How. 369. This has been followed by many other cases. The principle is supported by the reasoning of the opinions of this court in Wagner Free Institute's App., 116 Pa. 555; s. c. 132 Pa. 612. It will be observed that the act of 1853 provides that the property of the corporation shall be "and remain" free from taxation so long as the income and property are used for the relief of the sick and insane poor, "any law to the contrary notwithstanding." The last words clearly refer to any future law. The contract was, that the property should remain free, the exemption continuing so long as the charter requirements are fulfilled. Every donor who has given money since the passage of the acts of 1845 and 1853, may properly claim that this contract was a part of the consideration of his gift.

*Mr. E. Spencer Miller*, Assistant City Solicitor, (with him *Mr. Charles F. Warwick*, City Solicitor), for the appellee:

Opinion of the Court.

1. Decisions of the federal court of last resort have established that a state may contract to exempt a subject from taxation. The only question left is whether the legislation, in the particular case, evinces so palpably an intention to make a contract of this extraordinary character, as to leave no doubt in any reasonable mind. The acts of March 19, 1816, P. L. 240, and March 19, 1845, P. L. 187, may at once be dismissed from consideration. Passing the point that the former of these private acts is not averred in the affidavit, it is enough to say that the act of 1816 applies only to property directly occupied for hospital purposes, and the latter act only to property owned at its date. The affidavit avers neither of these things of this property.

2. Therefore the act of 1853, alone, is to be considered, and its language contains nothing inconsistent with the more natural interpretation of a simple allowance of the exemption, without any contractual limitation of the taxing power. The phrase, "any law to the contrary notwithstanding," is a time-honored form of expression, indicating a purpose to repeal or limit existing statutes. But the rule, ex nudo pacto, etc., is an impassable barrier in the defendant's path. And the uses of the property cannot furnish a consideration. If they were obligatory before 1853, they could not be such, and if not obligatory before the act of that year was passed, they are not so now. Nor is there any indication that the exemption was conferred with reference to any subsequent gifts to the hospital; and, besides, the so-called consideration, claimed to have arisen thus, does not move from the corporation, but from a stranger to the alleged contract.

PER CURIAM:

It was conceded upon the argument that the lots, against which the city claims for water pipes were filed, were liable therefor unless the state has contracted away its power of taxation as to them. The appellant contends that this is the case; that the state is under formal contract, based upon a sufficient consideration, to forever exempt from taxation all the property which the corporation owned in 1853, if not all it may hereafter purchase for its actual use, or the investment of its funds. In support of this proposition we are referred to a number of

acts of assembly, the most important of which are : Act of
March 19, 1816, P. L. 240; act of March 19, 1845, P. L. 187;
and act of April 18, 1853, P. L. (1854) 834.  The only one
of said acts to which it is necessary to refer is that of 1853, the
seventh section of which provides " that the estates and pro-
perty, real and personal, belonging to the contributors to the
Pennsylvania Hospital, shall be and remain free from the pay-
ment of taxes of any kind whatsoever, as long as the income
from said estates and property is used for the relief of the sick
and insane poor, any law to the contrary notwithstanding."

While this section is an explicit exemption of the property
of the corporation from taxation, there is nothing upon its face
to make it a binding contract by the state, by which the hands
of another legislature are so bound as to prevent the repeal of
the act, or the imposition of subsequent taxation.  The closing
words of the section, " any law to the contrary notwithstanding,"
cannot, under any recognized rule of construction, be held to
apply to subsequent legislation.  They evidently refer to laws
in existence at the time of the passage of the act, and are a
general form of expression to indicate that the legislative will,
thus expressed, is not to be interfered with by any other laws
in existence, which seemingly conflict therewith.  While there
are decisions which hold that a state may contract away its
power of taxation as to a particular subject, it is a most im-
provident and dangerous exercise of power, and ought never
to be evidenced by mere implication, but should be expressed
in the clearest manner.  In the case in hand, the want of con-
sideration is a full answer to the appellant's contention.

It was strongly and plausibly urged, however, that many
large and valuable gifts had been made to the corporation
upon the faith of its exemption from taxation, and that these
gifts constitute a sufficient consideration to support such con-
tract.  The fallacy of this reasoning consists in this : that the
contributors referred to are presumed to have known, when
they made their gifts, that the legislature had the power to repeal
all of the exempting legislation, and might do so at any time.
Nor do the uses to which the property is to be applied furnish
such consideration.  We concede they are a powerful argument,
when addressed to the wisdom and discretion of the legislature,
but not to its power.  The principle contended for by appel-

lant is of vast importance, and far-reaching in its consequences,
and it is not to be sustained except in a case entirely free from
doubt.

Judgment affirmed.