## Daly's Estate.

*Will—Charitable use—Trust and trustees—Executors and administrators —Formation of corporation.*

Testator gave all of his estate " to furnish homes, shelter, protection and instruction and improvement to industrious girls and women, while either in or out of employment, at the least possible cost to them commensurate with maintaining the proper sense of self respect on the part of the beneficiary." He directed that his executors and trustees should forthwith obtain a proper charter. He also provided that his endowment might be added to by others philanthropically inclined. *Held*, (1) that the will created a public charity; (2) that the trust was not indefinite and impossible of execution because dependent upon the contribution of others; (3) that there was no failure of trustee since the executors and trustees mentioned in the will were vested with the estate for the trust until corporate organization could be completed.

Argued Nov. 10, 1903. Appeals, Nos. 8–12, Oct. T., 1904, by John M. Daly et al., from decree of O. C. Allegheny Co., March T., 1903, No. 73, dismissing exceptions to adjudication in estate of W. H. Daly, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to adjudication.

HAWKINS, P. J., filed the following opinion:

It is insisted on behalf of the next of kin that Dr. Daly's disposition of his residuary estate is void.

1. Because the will shows on its face that his purpose was not to create a public charity; but simply the founding of a club or hotel.

2. Because of indefiniteness and uncertainty in the proposed scheme.

3. Because the gift being to a corporation thereafter to be created, there was no devisee competent to take at Dr. Daly's death; and

4. Because the proposed scheme is impossible of execution.

And therefore such residuary estate must be divided among the next of kin.

The will out of which these questions arise is as follows:

" First. I direct that all my just debts, funeral expenses and cost of granite cross similar to that I erected over my wife's grave, with date of my birth, Sept. 14th, 1842, inscribed thereon and the date of my death, be paid. I desire to be buried beside my children, so that they will lie between my deceased wife, Athalia, and myself.

" Second. There shall be no appraisement of my estate, and no sales made thereof unless deemed by its executors or trustees to be for its benefit, advantage, and increase of income from same. They shall be the judges of this matter and have power to sell, build, improve or otherwise better the condition of my estate towards the end and uses for which I will it to be applied.

" Third. I direct, will and bequeath all my estate, both real, personal and mixed, and of all kinds wherever located, including life insurance to the basic endowment, founding, establishment, and maintenance of a home or homes for industrious girls and women, without respect to age or sect. The first to be established in the counties of Allegheny and Beaver. Others can be located elsewhere, as the fund shall grow adequately through the philanthropic generosity and consideration of others toward a worthy class of girls and women who have not received the attention and kindness they merit. If during my life, I shall have time and opportunity to establish the initial ' Athalia Daly Home ' in Pittsburg, then my estate is to be applied to the further endowment, maintenance and purposes herein before named. The bequest of my estate for the purpose herein before indicated and named being first subject to certain life annuities, to be paid in quarterly installments to the persons hereinafter named, in equal sums during their natural lives, and to cease and determine at each of their respective deaths. The ' Athalia Daly Home ' or Homes at once becoming the beneficiary of the sum or sums so deter-

mined, whether such respective deaths occur previous to, or subsequent to, my own death and the probating of this will. The personal beneficiaries, under this will in manner as aforesaid, are John M. Daly and Mary Daly, his present wife, of Broad Creek, County of Princess Ann, State of Virginia, Thomas L. Daly and Carrie, his present wife, of Gibsontown, County of Westmoreland, State of Pennsylvania, Jennie Mar Dunaway, of Virginia, County of Cass, State of Illinois, Agnes D. Johnstone, of Pittsburgh, County of Allegheny and State of Pennsylvania, Mary M. Short, of Pittsburgh, County of Allegheny, and State of Pennsylvania, who shall each be paid out of the income from my estate Six hundred ($600.00) per year in quarterly installments, that is to say, One hundred fifty (150.00) dollars at the end of each quarter, during their natural lives, and the natural lives of each of them. Their heirs and assigns being excluded by my will. The aforesaid sum from the income of my estate shall in no way be increased by the death of other beneficiaries, and the sum or sums they so receive are to be used only for their own respective current support and maintenance in life, and shall in no way go to pay debts incurred, or obligations assumed or anticipated by them, for themselves, or others, nor shall the income be anticipated, incumbered, transferred, or set over to any one else, or in any sense be liable for their debts, current, anticipated, or transferred by the aforesaid beneficiaries. The mortgage I hold against the farm of John M. Daly and his wife Mary Daly, is not to be foreclosed nor payment demanded of interest or principal of same during the natural lives or ownership of either of them.

"Fourth. The manner of endowment, founding, maintenance, name, working, conduct, objects and aims of the 'Athalia Daly Home' or Homes shall be as follows and continue so:

"*a.* My estate to be the basic endowment fund to be added to by others who may be so philanthropically inclined, to advance and enlarge the usefulness of its aims. The name to be 'The Athalia Daly Home' or Homes for industrious girls and women.

"*b.* A proper charter shall be obtained forthwith by my executors and trustees of the estate hereinafter to be named, if I have not already done so during my lifetime, and my executors

are empowered to pay from my estate for each executor and trustee, Ten ($10.00) Dollars to the 'Athalia Daly Home' or Homes. If said executors and trustees do not wish to pay that sum themselves until the number of contributors shall be sufficient in number and character other than the executors and trustees hereinafter to be named to insure wise and conservative maintenance and working of the 'Athalia Daly Home' or Homes. Since it is my desire that contributors of Ten ($10.00) Dollars or more shall be the constituent voters for the election of managers annually from among the number of contributors.

" c. The working, conduct or economy of the management of the 'Athalia Daly Home' or Homes, does not contemplate that any large building shall be erected for the purpose, but rather one or more plain dwellings, comfortably furnished and adapted for the purpose, preferably some one or more of those belonging to my estate in Allegheny or Beaver county, or both. The object, intent, aim and effect of the 'Athalia Daly Home' or Homes shall be to furnish home, shelter, protection, instruction and improvement to industrious girls and women, while either in or out of employment, at the lowest possible cost to them, commensurate with maintaining the proper sense of self respect and ambition on the part of the beneficiaries, who shall desire or require the shelter of plain, comfortable and cheerful homes, surrounded by good influences, attended by proper and wholesome amusements, presided over by kind and friendly guardian officers, known to be interested in the happiness, prosperity, self respect and welfare of the beneficiaries. To those honestly out of employment, especially shop, sewing and servant girls, or others run down physically by over-work, misfortune or anxiety, there shall be the most generous consideration given in every way to their restoration to health and industry, and employment secured for them. To girls who have strayed from the path of rectitude there shall be a helping hand extended toward restoration to the paths of usefulness, propriety and industry. This class of girls can be cared for in one of the branches of the home separately. There shall be evening courses of lectures and training during nine months of each year, given by women who are experienced housekeepers, on the duties of housekeepers toward servant girls, and other relevant matters.

" There shall be lectures in the same manner given by women, if possible, who are or formerly were servants themselves, upon the duties of servants toward housekeepers, one another, and other relevant subjects. There shall be lectures and other papers read by merchants on the duties of merchants and other employers of female labor, clerks, shop girls and others on the duties of such employers to their employees with reference to their preservation of health, comfort and proper deportment. There shall be lectures. and papers read and training given by competent shop girls or other employees, or those who formerly were such, on the needs, the duties and deportment by such employees toward their employers. These lectures, papers and discussions of same to be at meetings regularly organized, presided over by competent officers that they may be conducted under parliamentary rules, in proper manner, open to the public for free discussion of abuses and reforms needed in all the questions treated of at all lectures. A cooking school and training in all house and chamber work shall be a department in each of the homes.

" *d.* A system of annual bonuses or rewards shall be established for long, faithful and continuous service of servant, sewing and shop girls, if possible (similar to the German Housewives Society of New York City). These rewards may be elected by the beneficiaries to be transferred to credits in an insurance fund, to be applied to their individual maintenance in sickness, old age and a decent burial at death.

" *e.* My Badenbrook Farm Mansion House at Baden, Beaver County, Pa., can be used as a country home for those who need or prefer the invigorating influence of a sojourn amid rural surroundings.

" Fifth. I hereby appoint Hon. John M. Kennedy, Marcus A. Woodward, William H. R. Gass, my executors of this will. Their compensation in full shall be Three hundred ($300.00) Dollars each for their services. They are also to be trustees for life of my estate. I will that the other trustees be as follows, the senior judges of the several county courts of Allegheny and Beaver counties, the Mayor or chief municipal or borough officer of Pittsburg, Allegheny, Beaver and Baden, who shall forthwith complete the organization of the 'Athalia Daly Home or Homes,' if I have not already done so, and if I

have already established such they and their successors in office will then take full charge of same and of my estate under my will, conduct and control its best interests and purposes forever. It will be understood that the several officials named as trustees will be those while in active official duty, as senior judges, mayor or chief municipal or borough officials, and to be succeeded in turn by their active successors while in office. The establishments shall conform to the requirements of the State Board of Charities and its inspections. Contributors and trustees as aforesaid shall annually elect a Board of Managers consisting of seven men and seven women, who are capable and interested in philanthropic work of this character."

Dr. Daly took no steps in his lifetime to organize this Home; and the executors have very properly delayed action until the questions now raised could be brought to the court's attention.

The estate is estimated to be worth $250,000.

The terms of this gift show very plainly Dr. Daly's purpose to better the moral, mental and physical condition of certain classes or portions of mankind; and therefore create a charity, " the object, intent, aim and effect of the Athalia Daly Home," he declares, " shall be to furnish homes, shelter, protection, instruction and improvement to industrious girls and women, while either in or out of employment, at the lowest possible cost to them commensurate with maintaining the proper sense of self respect on the part of the beneficiaries, who shall desire or require the shelter of plain, comfortable and cheerful homes surrounded by good influence, attended by proper and wholesome amusements, presided over by kind and proper guardian officers known to be interested in the happiness, prosperity, self respect and welfare of the beneficiaries." There is a whole beadroll of cases in which the language of gifts made to charity is no stronger than this—in many of which indeed it is less strong—was held sufficient to declare charitable purpose and to create valid charities: Bispham's Equity, sec. 119, et seq. Thus gifts expressed to be " for the distribution of good books among poor people in the back parts of Pennsylvania : " Pickering v. Shotwell, 10 Pa. 23 ; " for the uses and purposes of Friends' boarding school; " Price v. Maxwell, 28 Pa. 23 ; " for

the moral, intellectual and physical instruction and education of the inhabitants " of a city : Lowell's Appeal, 39 Mass. 215 ; for " shelter to homeless people at night irrespective of creed, color or condition : " Croxall's Estate, 162 Pa. 579 ; " for the relief of homeless, indigent orphans " without regard to race or religion : Stevens's Estate, 200 Pa. 318 ; and for " a free library which may be established in the City of Philadelphia : " Pepper's Estate, 154 Pa. 331, show the trend of judicial decision. If this be sufficient to show charitable purpose and create valid charities, surely Dr. Daly's gift for the " endowment, founding, establishment and maintenance of a home or homes for industrious girls and women without regard to age or sect " must be regarded in the same light.

The objection made to this view, that because Dr. Daly's scheme contemplated the inmates of the home shall pay " the lowest possible cost for shelter, instruction," etc., overlooks the fact that they are beneficiaries, not only of reduced cost, but the absolute enjoyment of the large estate, which is the foundation of the charity.

It must, of course, be conceded that if profit had been in contemplation the objection would have been well taken ; but the terms of the gift excluded this idea, and it is too well settled to admit of doubt that a gift does not lose its character of charity simply because the scheme of management contemplated revenue from the recipients of its bounty, sufficient to keep it in operation : Episcopal Academy v. Philadelphia, 150 Pa. 565 ; Price v. Maxwell, 28 Pa. 23 ; Philadelphia v. Keystone Battery A, 169 Pa. 526.   There is an obvious and material difference between institutions of this kind with perpetuity and open doors and social and business clubs, with restricted members and ownership and power at any time to wind up their affairs and go into liquidation.

So the objection that the scheme is " indefinite " and " uncertain " is not sustained by the law.   The rule that to raise a valid trust there must be sufficient words, a definite subject and a certain object has its exception in charitable uses of which uncertainty and indefiniteness of object are characteristic : Bispham's Equity, sec. 116.   The act of 1855, re-enacted in 1895, expressly declares that no disposition of property made for charitable use shall fail " by reason of the objects being in-

definite " or " uncertain." They are necessarily indefinite and uncertain because they apply to a class with whom it is optional to claim or refuse the proffered bounty.

Nor is the objection that there was no trustee in existence, when Dr. Daly died, competent to take. The direction that his " executors and trustees " should " forthwith " obtain a " proper charter " impliedly made them trustees for the purpose of formal organization of the charity and vested the estate in them, until that had been accomplished. But even assuming that duty had not been imposed upon them, this court would have been required by the mandate of the act of 1855 to prevent failure of the ·" use " by supplying a trustee and carrying out the testator's intent so far as consistent with law and equity.

Thus where a bequest was made to a person or corporation incapable of taking, the court appointed a trustee to carry out the trust: Frazier v. St. Luke's Church, 147 Pa. 256. So where there was a bequest " to the trustees of such free library which may be established in the·city of Philadelphia," it was held that the fund was properly given to such library established after the administrator's death: Pepper's Estate, 154 Pa. 331. The case of Zeisweiss v. James, 63 Pa. 465, upon which counsel for next of kin relied, is not necessarily inconsistent with this view. The organization of the Infidel Society, which was intended to act as trustee, was made dependent on the option of strangers who might never organize; no duty was imposed on the executors in the matter, and the power was therefore too remote; while here Dr. Daly having imposed the duty of immediate action, the executors were made the link between him and incorporation.

" Before the year 1855," said Mr. Justice SHARSWOOD, in Mann v. Mullin, 84 Pa. 297, " it was a clear and well settled rule that when the objects of the charity were uncertain there must be vested somewhere in a competent trustee or trustees, the discretion absolutely necessary to carry them into effect by selecting those objects. By the provisions of the tenth·section of the act of assembly, passed April 25, 1855, this rule is impliedly recognized, and a remedy enacted for future cases in which the donor and testator has omitted to vest such a discretion in a trustee or trustees," by making it the duty of

the orphans' court to supply a trustee and carry out the donor's intent so far as consistent with law and equity. But even under the old rule the power to act at discretion in the administration of a charity need not have been expressly given for it could be implied from the nature of the trust, Pickering v. Shotwell, 10 Pa. 23, and here there was a very large discretion implied in respect of the buildings and management of the Home.

There is no apparent reason why at least the main features of Dr. Daly's scheme should not be carried out. There exists the encouragement of successful issue of many similar schemes. Even assuming there will be no voluntary contributions, this is but a secondary intent which may not defeat the main scheme: Manners v. Phila. Library Co., 93 Pa. 165. In any event, all of those who fill the description of intended beneficiaries could not be accommodated. Even charitable institutions of the largest endowments are unable to meet all the demands made upon them; and yet forfeiture of their powers would be a public calamity. Dr. Daly's estate is of itself large enough to afford a commodious home; and no one can doubt that there are many "industrious girls and women" who would be glad to avail themselves of its advantages. Some of the suggestions, and they are not more than suggestions made by Dr. Daly, which may now seem impracticable, may prove the reverse. Dr. Daly had ample opportunities of observation, and must be given the credit of having studied the subject carefully. His scheme should not be smothered in mere speculation, but be given a fair trial. Even if some of his suggestions as to management should prove impracticable, it is not at all likely that there will be enough to seriously cripple the administration. Assuming that the whole scheme of management should fail, the charitable use will not be permitted to fail. Charities have always been favorites of the law in Pennsylvania, and the act of 1855 provides remedies which seem to make it impossible that any charity should fail through defects in the scheme of management. If the power of the courts under existing law to give relief be "exceeded," the legislature has reserved the power to turn the trust fund over to "public use." Once therefore establish the use, and the next of kin can have no further concern in the matter.

The executors will therefore proceed to the organization of the charity as provided by Dr. Daly's will.

*Error assigned* was decree dismissing exceptions to adjudication.

*Willis F. McCook* and *J. S. Ferguson*, with them *J. M. Stoner*, for appellants.—We do not contend that Dr. Daly has failed to create a valid charitable trust because of the indefiniteness and uncertainty of the beneficiary but rather the reverse ; that Dr. Daly did not intend to create any charitable trust whatsoever, because he names a definite, certain and exclusive beneficiary, to wit: the Athalia Daly Home.

There is a wide difference, and distinction should be drawn, between a charitable use and a gift to a charitable institution.

What the testator undertook to create was not a charity, but simply the establishment of a club or hotel, which is to be self sustaining : Dale v. Knepp, 98 Pa. 389; Philadelphia v. Masonic Home, 160 Pa. 572; Kerlin v. Campbell, 15 Pa. 500 ; Stratton v. Physio-Medical College, 149 Mass. 505 (21 N. E. Repr. 874) ; Powers v. Massachusetts Homoeopathic Hospital, 109 Fed. Repr. 294.

Therefore our proposition is that the devise in this case is not protected by either the act of 1855 or the amendatory act of 1895, and therefore must fail.

The whole of the scheme is impractical : Swift v. Beneficial Society of Easton Borough, 73 Pa. 362; Chapin v. Holyoke Y. M. C. A., 165 Mass. 280 (42 N. E. Repr. 1130).

*James R. Sterrett*, of *Patterson, Sterrett & Acheson*, and *M. A. Woodward*, for appellees.

PER CURIAM, January 4, 1904 :

The decree is affirmed on the opinion of the court below, all costs to be paid by appellants.