WILKIN HALE STATE BANK

        VS                                              No. 7872

A. S. TUCKER et al.

November 22d, 1920.

WILKIN HALE STATE BANK

VS                            No. 7872

A. S. TUCKER et al.
           Appellants.

       Appeal from Civil District Court, Hon. E. K.
Skinner, Judge.

         CHARLES F. CLAIBORNE, JUDGE.

       This is a suit upon three promissory notes of which
the following is a copy:

         "$500.00          Oklahoma City, Okla. Feby. 24, 1917.

          On the 24 day of August 1917 for value received,
I, we, or either of us promise to pay to the order of
Pruiett, Day & Sniggs at the State National Bank of
Oklahoma City, Oklahoma, Five Hundred Dollars with
interest at the rate of 10 per cent per annum after
maturity until paid, interest payable annually. In
case this note is placed in the hands of an attorney
for collection, we agree to pay $25 additional attor-
ney's fees. The endorsers, guarantors, and assignors,
severally waive presentment for payment, protest, and
notice of protest thereof for nonpayment of this note,
and consent that time of payment may be extended with-
out notice.

               "Signed"          A. S. Tucker

                         Joseph St.Mary

Endorsed:

       Pay to the order of Wilkin Hale State Bank.

            "Signed"       Pruiett, Day & Sniggs

                  by Moman Pruiett

       The second and third notes are payable on the 24th
day of September, 1917 and 24th day of October, 1917, respec-
tively, and are similar in other respects.

       Plaintiff alleged that it was the holder for value
in good faith before maturity of the above mentioned three notes,
for the payment of which they had made amicable demand upon the
defendants; and it prayed for judgment against them in solido

for $1500 with ten per cent per annum interest from the maturity of the notes and $75 attorney's fees, and all costs of suit. ·

The defendant Tucker admitted his signature to the three notes, but denied any indebtedness on said notes; he denied all the allegations of the plaintiff above set forth. He further alleged that at the request of Joseph St. Mary he proceeded to Oklahoma City to engage counsel to defend a case in a criminal charge; that he engaged Pruiett, Day & Sniggs who, on February 24th, 1917, agreed to render all legal services in the case, and to pay all expenses incident thereto; that for said services and costs said firm charged $2500, of which $1000 was paid cash, and for the balance, say $1500, defendant signed the three notes aforesaid until they could receive the signature of Joseph St. Mary; therefore he denies any individual liability as co-maker of said notes; he further adopts all the defenses urged by Joseph St.Mary in his answer; and in accordance therewith he denies that the plaintiff is an innocent holder for value before maturity within the meaning of the Negotiable Instrument Act.

Joseph St. Mary, like Tucker, admitted his signature to the three notes, but denied any indebtedness on the notes; he denied all plaintiff's allegations, but admitted amicable demand and refusal to pay. He repeated the occasion of the employment of Pruiett, Day and Sniggs, and the signing of the contract and of the three notes by A. S. Tucker, who acted as his agent; that he proceeded to Oklahoma City a few days before the trial of the case, when at the request of Moman Pruiett on May 26th, 1917, he advanced him $500 for the purposes of the case; that also at his request he again advanced Pruiett the following additional sums, viz:

On June 6th, 1917 . . . . . . . . 17.50
"    "    "    "    . . . . . . . . 75.00
"    "    "    "    . . . . . . . . 212.50
"    "    "    "    . . . . . . . . 500.00
              which with            600.00
            made a total of       $1405.00
and he advanced Victor A.Sniggs    130.00
            making a total of     $1535.00;

130

that the above amount so advanced by defendant became legally applicable to the extinguishment of said notes, but that defendant did not require their production to write the proper credits thereon, relying upon the integrity of the attorneys;

"that since said notes had been paid in their entirety, long before the maturity of any one of them, their negotiation, if in fact such had been made, was manifestly a fraud upon the rights of this respondent, and since such transfer was not legally possible, your respondent specially denies that plaintiff is a holder in due course of said notes".

The defendants prayed for a jury. There was a verdict and judgment against them. From this judgment they prayed for a new trial upon the following grounds, viz:

"1o That no proof was offered of the indorsement of the payees, Pruiett, Day & Sniggs, of the notes made payable to their order; that upon objection being made to admissibility of the notes, it devolved on the holder under the issue raised by the pleadings, to show title by proving the genuineness of the signatures of the indorsers, in order to obtain judgment against the makers;

2o That the plaintiff, Bank, according to the testimony of its two officers, acquired the notes sued on as collateral to secure the individual indebtedness of Morman Pruiett, a member of the law firm of Pruiett, Day & Sniggs, without any showing of authority in said Pruiett from his co-partners to consent to or acquiesce in a loan to said Pruiett, and which loan was placed by the bank to the credit of an oil and gas company in which plaintiff's witnesses testified the firm of Pruiett, Day & Sniggs had no interest or concern whatsoever;

3o That there is no implied authority in a member of a law firm to indorse the paper payable to the firm for his own use, so that even if it can be inferred from the testimony which however is denied, that Pruiett himself indorsed the paper sued on in the name of the firm,

131

such indorsement could not pass title;

4o   That the evidence adduced does not disclose that the plaintiff Bank was an innocent holder in due course of the notes sued on, without the meaning and intendment of the law relating thereto".

The new trial was refused and defendants have appealed.

.The three notes were dated February 24th, 1917; the first was payable August 24th, 1917 and the two others, one and two months later; the plaintiff came in possession of them on March 12th, 1917; on that date no payment had been made on account of them; all payments are shown to have been made later in May and June 1917 to Pruiett after he had parted with the possession of the notes and after they had gone in the possession of the plaintiff. The only circumstance to connect the plaintiff with the several payments made by St. Mary on those notes is the fact that all the paymmnts made by him were by drafts; a draft for $1000 to the order of Pruiett, Day & Sniggs to cover the cash payments, and two drafts of$17.50 and $500 to the order of Morman Pruiett, all three of which were collected through the plaintiff bank. This was not sufficient to fasten upon the plaintiff knowledge that those last two payments were on account of the notes. The plaintiff had a right to presume that the defendants would have required any payments on account of the notes to be credited thereon. Of course, none of those payments could affect the rights of the plaintiff, if the notes were endorsed in such a manner as legally to transfer them to the plaintiff. C.C., 2145 (2141); 12 Ct. App., 266; 13 Ct.App., 221.

The defense therefore rests upon the first three propositions submitted by the defendants on their application for a new trial. They are that there was no proof of the indorsements of the three notes by the payees Pruiett, Day and Sniggs, nor of the authority of Pruiett to indorse for his partners Day and Sniggs, and consequently that the plaintiff acquired no title to the notes· 2o   that the three notes were pledged by Pruiett to secure his individual indebtedness to the plaintiff which he had no right to do, and 3o   that one partner has no authority to endorse partnership notes for his own personal use without the authority of

his partners.

*1 2*     Morman Pruiett testified that he indorsed these three notes and transferred them to the plaintiff.

Victor A. Sniggs, of the firm of Pruiett, Day and Sniggs, testifies as follows:

> "I have heard the testimony of the witness, Morman Pruiett, and read his answer and that fully sets forth to my certain knowledge what was done in this case, x x x Yes. Morman Pruiett of said firm did. (indorse and transfer to Wilkin Hale State Bank the promissory notes of Tucker and St.Mary). I was present when he answered his interrogatory in regard thereto and have read said answer,and it sets out fully. the occasion and circumstances under which the transfer of the notes in question were made".

Jean P.Day, also of the firm of Pruiett, Day and Sniggs, testified as follows:  He was asked, as Pruiett and Sniggs had been asked:

> "Did the firm of Pruiett, Day and Sniggs or any members thereof indorse, transfer, or pledge to the Wilkin Hale State Bank of Oklahoma City, one or more promissory notes executed and subscribed by A. S. Tucker and Joseph St.Mary?"

He answered:

> "Yes.  They were dated February 24th, 1917 for $500 each due in 6, 7 and 8 months after date.  Mr. Pruiett wanted some funds, personally, and I consented at his request to his negotiating the St. Mary notes at the Wilkin Hale State Bank".

This testimony cures the possible error of the trial Judge in admitting in evidence the notes before the proof of the indorsements.

*2 2*     This testimony also establishes conclusively that Pruiett, indorsed the notes, that he was authorized to make the indorsement, and to use the notes for his own personal use and benefit. Any apprehension that the defendants might entertain that Day or Sniggs might in the future assert any claim against them by virtue of those notes is thus completely removed.

Besides, Day and Sniggs having testified in favor of the plaintiff would be estopped from claiming hereafter any interest in said notes.

25 A., 557; 18 ~~A. 294; 46 A. 571~~; 30 A., 50; 40 A., 780.

*35 a 743* It is true that the above testimony was given in answers to interrogatories on commission, returned and found in the record, though not specifically offered in evidence. But there is neither specific law nor jurisprudence requiring them to be so offered. The testimony of witnesses taken in open Court need not be offered in evidence; nor answers to interrogatories on facts and articles. But they are part of the record and either party may use them without formally offering them in evidence. 5 M., 272, 592; 5 N. S., 179; 9 R., 19; 19 A., 490. *4 La 158 -*

But be that as it may, with the knowledge that the Court has acquired of the facts of this case as developed in that testimony not specifically offered in evidence, this Court would consider it its duty, in furtherance of justice, to remand the case, to allow the plaintiff to offer the testimony. C.P., 906. This would entail needless delay and expense which this Court thinks its duty to avoid by deciding the case as set forth in the record as it is.

*1 La Dig p 639-[?]La 324 - 22 a 246 - 4 Ct App*
*348*
*5 id 62*
*130 La 765*

It is therefore ordered that the judgment herein be affirmed.

*9 Ct App*
*110. 321 -*
*317 -*
*138 La 829*

November 22d, 1920.