## Osteopathy in Hospitals.

*Hospitals—Osteopathy—Treatment in hospitals—Powers of trustees—Act of April 24, 1901, P. L. 98.*

1. The trustees of a hospital under the care and control of the Commonwealth may refuse an osteopathic practitioner permission to treat in the hospital a part-pay patient or a private room patient.

2. Legislation relating to osteopathic practitioners has not endowed them with the legal right to make use of the facilities of hospitals in which methods of treatment recognized and maintained by older schools, such as allopathy and homeopathy, prevail.

Department of Justice. Opinion to Dr. O. J. Snyder, President of Board of Osteopathic Examiners.

ANDERSON, Dep. Att'y-Gen., June 14, 1926.—Your letter of June 4, 1926, enclosing a letter from Dr. T. S. Fuller, of Corry, Pennsylvania, with respect to a hospital which informed him that a part-pay patient would have to be attended by a medical doctor who was on service, and which also refused to allow him to treat a private-room patient, has been received and fully considered. The questions which Dr. Fuller raises through you are at once serious and delicate. By successive pieces of legislation, osteopathic physicians and surgeons have come to be recognized as a complete, distinct and separate school of the healing art. None of this legislation, however, has endowed osteopathic practitioners with the legal right to make use of the facilities of hospitals in which the methods of treatment recognized and maintained by older schools, such as allopathy and homeopathy, prevail.

The only legislation on the subject seems to be the Act of April 24, 1901, P. L. 98, which provides that the trustees of hospitals and asylums under the care and control of this Commonwealth shall, for the purposes for which such trustees have been or shall be appointed, be endowed under their legal title with corporate powers and be subject to corporate obligations, with the right to sue and subject to be sued as corporations under the general laws of the Commonwealth.

That act has not disturbed the thoroughly-established principle that a purely public charity cannot be made liable for the tort of its agent, servant or employee: Gable v. Sisters, 227 Pa. 254 (1910). It has, however, emphasized the fact that, within the scope of their charters, charitable corporations, such as hospitals, are managed and controlled by boards of trustees, which determine the financial, business and administrative policies of such institutions: Philadelphia v. Pennsylvania Hospital, 134 Pa. 171; Daly's Estate, 208 Pa. 58; Gable v. Sisters, 227 Pa. 254 (1910).

Under that act, therefore, any hospital under the care and control of the Commonwealth is entitled to determine not only what sort of treatment may be administered in its wards and rooms, but who may prescribe and administer remedies therein. If the charter of a hospital limits the character of diseases and injuries to be cared for by it, or defines the branch of the healing art whose philosophy is to be followed by it, then a violation of the charter would take place if a practitioner of a different school of the healing art were permitted to treat his patients in such a hospital or to make use of its facilities.

In view of these considerations, I have to advise you that the Corry Hospital acted entirely within its rights in excluding Dr. Fuller from the treatment of the part-pay patient whom he had occasion to take there, and also refusing to allow him to treat a private-room patient there. It is conceivable

that this situation may be harmful to the health and welfare of the people of the Commonwealth, but the remedy lies with the legislature and not through any legal proceeding at present known to the law.

From C. P. Addams, Harrisburg, Pa.