(No. 22664.—

THE CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY *et al.* Appellees, *vs.* BASIL W. HARRIS *et al.*— (VERNA ROGENE HARRIS EWEN, Appellant.)

*Opinion filed December 19, 1934—Rehearing denied Feb. 7, 1935.*

WILLIAM R. T. EWEN, for appellant.

OTTO KERNER, Attorney General, (JAMES G. SKINNER, of counsel,) for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county construing the will of Squire Rush Harris, deceased, executed February 26, 1926. He died February 26, 1930, leaving as his only heirs-at-law the complainant Sarah S. Harris, his widow, and the defendant Verna Rogene Harris Ewen, his daughter. The estate consisted of an unimproved farm of about 125 acres in Lee county, Illinois, certain parcels of real estate, some improved and some unimproved, in Evanston and Chicago, 26 acres of unimproved land in Clare county, Michigan, and also personal property, consisting of cash, mortgages, bonds and corporate stocks. The value of the real estate did not exceed $75,000 and the value of the personal estate did not exceed $125,000. The widow renounced under the will and at first elected to take her dower and legal share of the estate under the statute, but subsequently waived her dower and elected to take in fee one-third of each parcel of real estate located in Illinois. The bill was filed by the Continental Illinois National Bank and Trust Company and Sarah S. Harris, as executors of and trustees under the will, against Verna Rogene Harris Ewen individually and as trustee under the will, persons named in the will as beneficiaries, and also the Attorney General of Illinois, who was made a party because the principal issue is whether clause 7 of the will creates a public charitable trust.

Clause 1 of the will provides for payment of debts and funeral expenses. Clause 2 bequeaths the sum of $1000 to the Goodwin Endowment Fund of the New First Congregational Church of Chicago. Clause 3 bequeaths $500 to Rush Harris Powell for the education of his children, and appoints the Illinois Merchants Trust Company, (now Continental Illinois National Bank and Trust Company,) Sarah S. Harris, the widow, and Vera (Verna) Rogene Harris Ewen, the daughter, as executors of and trustees under the will. Clause 4 bequeaths to the trustees $100, the income of which is to keep in good repair the grave of the testator's mother in Pennsylvania. Clause 5 bequeaths to Basil W. Harris the net income from $5000 for his natural life, provided he shall not drink intoxicating drinks, requires him to furnish affidavits in that respect, provides for cessation of payments to him if the trustees shall find he has used intoxicating drinks, and also that upon his death the $5000 "shall revert" to the "estate" of the testator. Clause 6 bequeaths to Mabel Worden Potter Eccles, a niece, the income from $1000 for her life, "when at her demise said income shall revert to my estate."

The trial court's interpretation of clause 7 furnishes the principal reason for this appeal. That clause is as follows:

"*Seventh:* I hereby direct that my said trustees pay to my beloved wife, Sarah S. Harris, during her natural life, two-thirds (⅔) of the residue of the net income of my estate, and one-third (⅓) of the residue of my net income to my daughter Vera Rogene Harris Ewen, during her natural life. After their death I hereby direct the said Illinois Merchants Trust Company to organize a farmers' home for worthy, honest, respectable, law-abiding, American citizens, the first who shall receive entrance shall be kindred of myself, and I direct that they organize said home under the name of the Squire Rush Harris Home and is to be known as a charity home, but desire to have

those who are the beneficiaries therein to take such interest in caring for and supplying a farm for raising products, keeping chickens, hogs and cows for the sustenance of the home, and if I am still the owner of—and the trustees think it wise, to use my farm adjoining the city of Dixon, Lee county, Illinois, to use same for said home; I would direct that a board of directors or trustees be elected as follows: The master of Hesperia Lodge, A. F. & A. M. of Chicago, Illinois, be one trustee; the high priest of Washington chapter Royal Arch Masons of Chicago, Cook county, Illinois, be one trustee; the commander in chief of Oriental Consistory, S. P. R. S. 32° Masons A. A. S. Rite be one trustee; the minister of the New First Congregational Church of Chicago, Illinois, be one trustee, and the trust officer of the Illinois Merchants Trust Company be one trustee, and the said trustees shall elect two other trustees or more if thought wise."

Clause 8 directs the trustees to sell and invest funds of the testator's estate "to the best possible advantage, security being first considered, to get the largest income possible," and provides that the widow and daughter be considered before any action be taken, as well as the corporate trustee.

The decree appealed from holds, among other things, that by clause 7 the testator created a valid public charitable trust, and that upon the death of the testator's widow and his daughter all the property remaining in the hands of the trustees of the residuary estate is to be devoted to the purposes of said trust. The daughter, individually and as trustee under the will, perfected her appeal from this decree. She contends, principally, that the will does not dispose of the residue of the testator's estate; that clause 7 does not describe a charitable purpose and is therefore invalid as in violation of the rule against perpetuities, and that, in any event, the trust provided for in that clause is so vague, uncertain and indefinite as to be invalid.

Reading the will as a whole, we think there can be no doubt that the testator intended to dispose of all his property and that he intended the residue of his estate should be disposed of by the trustees in accordance with the provisions of clause 7. That clause, though perhaps not as clear in this respect as it might have been, in our opinion seeks to dispose of the residue of the testator's estate. Clause 5 directs that the $5000 therein referred to shall in the events therein mentioned "revert" to the "estate" of the testator; and this is true also of the $1000 the income of which is disposed of by clause 6. By clause 7 two-thirds "of the residue of the net income" of the testator's "estate" is given to his widow and the remaining one-third to his daughter, and upon their death the corporate trustee is directed to organize a farmers' home. The will, in our judgment, sufficiently expresses the intention of the testator to apply the entire residue of his estate, after the death of the widow and the daughter, to the organization of the farmers' home.

We are also of the opinion that clause 7 creates a valid charitable public trust. It is contended that this clause does not describe an object which the law recognizes as a public charitable purpose because it does not require that the persons entitled to be admitted to the home be objects of charity, such as poor, old or ill farmers, and because it requires that preference be given to kindred of the testator. We cannot accede to these contentions. In *Skinner* v. *Northern Trust Co.* 288 Ill. 229, we said: "It is well settled in this State that conveyances and devises to charitable uses are not within the rule against perpetuities. The statute of charitable uses (43 Eliz. chap. 4) is a part of the common law of this State. (*Heuser* v. *Harris,* 42 Ill. 425; *Crerar* v. *Williams,* 145 id. 625; *Franklin* v. *Hastings,* 253 id. 46; *Andrews* v. *Andrews,* 110 id. 223; *Welch* v. *Caldwell,* 226 id. 488; *French* v. *Calkins,* 252 id. 243.) Gifts to charity are looked upon with favor by the courts.

Every presumption consistent with the language used will be indulged in to sustain them. (*Franklin* v. *Hastings, supra.*) A charity, as defined by Mr. Justice Gray in *Jackson* v. *Phillips,* 14 Allen, 556, and approved by this court, is as follows: 'A charity, in a legal sense, may be more fully defined as a gift, to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burthens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.'—*Crerar* v. *Williams, supra."* To the same general effect we held in *Grand Lodge* v. *Board of Review,* 281 Ill. 480: "It is the duty of the public to care for the indigent and the poor who are sick and afflicted, and while the public burden is not for the relief of aged and indigent Masons as such, the public is not relieved from the burden because they are Masons, and any institution which serves no selfish interest, but discharges, in whole or in part, any such duty, is a public charity. To constitute a public charity the benefit must not be conferred upon certain and defined individuals but must be conferred on indefinite persons composing the public or some part of the public, but the indefinite class may be of one sex or the inhabitants of a particular city, town or county or members of a particular religious or secular organization. (5 R. C. L. 293; 11 Corpus Juris, 338.) The fact of such discrimination among those members of the general public who need relief does not deprive the charity of its public nature. While classifications depending upon race, color or sex involuntarily affect individuals of the general public, membership in a church or society is no more involuntary than the selection of different callings or trades,

as in the case of seamen, locomotive engineers, laborers, farmers, or other classes that would come within the distinction of a public charity in the case where the distinction was drawn. A home for working girls provided at moderate cost, with officers serving without compensation, with free attendance of physicians on the hospital staff, and a library and weekly entertainments, was held to be a public charity in *Franklin Square House* v. *Boston,* 188 Mass. 409, and we see no apparent reason for saying that a classification must be based on something which involuntarily affects the public at large. A public charity cannot be limited to defined individuals, but if it operates upon indefinite persons whose care and support rest upon the public the effect is to afford relief from the public burden and the charity is public in its nature. The Masonic Home is a public charity."

"Charity," in the legal sense, is not confined to mere almsgiving or the relief of poverty and distress but has a wider signification, which embraces the improvement and promotion of the happiness of man. (*Congregational Sunday School Society* v. *Board of Review,* 290 Ill. 108.) In *Jansen* v. *Godair,* 292 Ill. 364, a will provided for the erection and maintenance of "an old people's home" and an abode "where old people who are poor and unable to make a living may have a home." In that case we said: "It is evident from the will and the preamble thereof that the testator intended to create a gift to charity." After quoting the definition of a charity as given by Mr. Justice Gray in *Jackson* v. *Phillips,* 14 Allen, 556, we said: "It cannot be doubted that under this definition of a charity the gift in the will in question is a gift to charity."

In *In re MacDowell's Will,* 217 N. Y. 454, 112 N. E. 177, the will provided for establishment of a home "to be used as a home for refined, educated, Protestant gentlewomen whose means are small, and whose home is made unhappy by having to live with relatives who think them

in the way. * * * This home to be called the 'Mary Randal Memorial Home.' " In holding that the will created a public charitable trust the court said: "Many definitions of a 'charitable trust' have been formulated, but all the definitions that have been attempted carry the implication of public utility in its purpose. (*Jones* v. *Williams,* Ambler, 651, 652; *Mitford* v. *Reynolds,* 1 Phil. 185, 191; *Coggeshall* v. *Pelton,* 7 Johns. Ch. (N. Y.) 292, 294, 11 Am. Dec. 471; *Perin* v. *Carey,* 24 How. 465, 506, 16 L. ed. 701; *Vidal* v. *Girard's Exrs.* 2 How. 127, 11 L. ed. 205; *Williams* v. *Williams, supra,* at page 533 of 8 N. Y.; *Attorney General* v. *Moore,* 19 N. J. Eq. 503; *Ould* v. *Washington Hospital for Foundlings,* 95 U. S. 303, 24 L. ed. 450.) If the purpose to be attained is personal, private or selfish it is not a 'charitable trust.' When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations its charitable character insures its validity. * * * It has often been held that a public charity need have no special reference to the poor. (*Dexter* v. *Harvard College, supra,* at page 194 of 176 Mass., 57 N. E. 371; *Perin* v. *Carey, supra,* at page 506 of 24 How. 16 L. ed. 701; *Jones* v. *Williams, supra.*) In the case under consideration the object of the bounty of the testatrix was 'refined, educated, Protestant gentlewomen,' and the purpose of providing a home for such as should come within that designated class is a public charity. Such a charity is within the provisions of the law relating to gifts for charitable purposes (section 12 of the Personal Property law) when those provisions of law are construed in the broad and liberal spirit which Judge Chase, in *Matter of Robinson, supra,* at page 385 of 203 N. Y., 96 N. E. 925, 37 L. R. A. (n. s.) 1023, pointed out should be exercised in construing these provisions of this law. It is in this broad and liberal spirit that the courts have sustained a trust for the establishment and maintenance of a club-room for young men and boys in the city

of New York (*Starr* v. *Selleck*, 145 App. Div. 869, 130 N. Y. Supp. 693, affirmed 205 N. Y. 545, 98 N. E. 1116;) a trust fund to any society that assists poor needlewomen, and if no such organization exists, for the benefit of incapacitated sailors and their families (*Manley* v. *Fiske*, 139 App. Div. 665, 124 N. Y. Supp. 149, affirmed 201 N. Y. 546, 95 N. E. 1133;) a trust for a home for industrious girls and women (*Daly's Estate*, 208 Pa. 58, 57 Atl. 180;) a trust for a rest home for worthy working girls (*Sherman* v. *Congregational Missionary Society*, 176 Mass. 349, 57 N. E. 702;) a trust for a home for old and infirm ladies (*Eliot's Appeal*, 74 Conn. 586, 51 Atl. 558;) a trust for a temporary home for poor and invalid women (*Amory* v. *Attorney General*, 179 Mass. 89, 60 N. E. 391;) a trust for a home for bettering conditions of and comforting unfortunate widows and orphans of a certain city (*Gidley* v. *Lovenberg*, 35 Tex. Civ. App. 203, 79 S. W. 831;) a trust for 'an old folks home' (*Norris* v. *Loomis*, 215 Mass. 344, 102 N. E. 419; *Matter of Cleven's Estate*, 161 Iowa, 289, 142 N. W. 986; *Matter of Arrowsmith*, 162 App. Div. 623, 147 N. Y. Supp. 1016;) and a trust for the creation of a sailors' home (*Trustees of Sailors' Snug Harbor* v. *Carmody, supra.*)"

Gifts for the purpose of establishing or maintaining hospitals, asylums, public homes or like institutions for the benefit of the sick, injured, aged, infirm, insane, needy, homeless, friendless, or other persons in unfortunate circumstances, are for a purpose recognized by the courts as charitable. A gift for such a purpose is not invalid as a public charity because it does not impose poverty as a condition to the receipt of its benefits or because the inmates are expected to have some means and to contribute to its support and development. 11 Corpus Juris, 315, 316.

The testator provided by clause 7 for the establishment of a home for the support and care of farmers who were not only honest, respectable, law-abiding American citizens,

but who were also "worthy" of support and care in a "home," "to be known as a charity home." Bearing in mind that the paramount rule in cases of this kind is to ascertain and give effect to the intention of the testator, we cannot escape the conclusion that he intended to establish a public charitable institution. This intention is indicated by the testator's own characterization of the institution as a "charity home." Although the words are, merely, that the institution be "known as a charity home," in our opinion the testator intended these words to characterize and describe the very essence, nature and purpose of the home, and to provide, in effect, that the home should be available only to such farmers as are worthy objects of charity, whether because of poverty, advanced age, illness or other similar cause. This conclusion is fortified by the nature of the testator's choice of trustees for the purpose of administering the home.

It is contended, however, that the preference required by clause 7 to be given to kindred of the testator shows that this is not a charitable purpose, since the kindred are not required to be farmers and since the word "kindred" is not qualified by any such adjectives as "poor" or "needy." It need only to be observed that the nature and purpose of the home provided for by the will, as above construed, is such as to apply only to the kindred who may be farmers, and to exclude any and all farmers, whether or not kindred of the testator, who are not appropriate and worthy objects of charity. Nor does the required preference in favor of kindred of the testator make the trust any the less a charitable one.

In *In re MacDowell's Will, supra,* the will provided that relatives of the testatrix and their lineal descendants, as well as certain named friends of the testatrix, should be given the preference of being inmates in the "home." In holding this provision valid the court said: "We think that the reasonable interpretation of the language employed

is, that such of her relations and friends as were named in the preferential clause who were within the class designated, viz., 'refined, educated, Protestant gentlewomen,' should have a preference over others in becoming members of the home if they so desired. If we so construe the clause, the fact that among the relations and friends named were three men is not inconsistent with the declared purpose of the testatrix, because this construction of the clause would permit such of the female descendants of these three men as were within the designated class to avail themselves of the right to have a preference over others if they sought membership in the home. If such was the purpose of the preferential clause, there is nothing in the fact that a preference was given to certain persons that of itself rendered the trust attempted to be created private rather than public, or selfish rather than charitable. The creation of a preference in favor of relatives or named persons does not of itself make invalid a trust which is in other respects valid." The same rule has been announced in the following cases: *Darcy* v. *Kelly,* 153 Mass. 433, 26 N. E. 1110, *Gafney* v. *Kenison,* 64 N. H. 354, 10 Atl. 706, and *In re Daly's Estate,* 208 Pa. 58, 57 Atl. 180.

Nor are the provisions of clause 7 so vague and uncertain as to be invalid. As above indicated, the testator intended that those to be admitted to the home as inmates should be only such farmers who were not only honest, respectable and law-abiding American citizens, but also such as were worthy and appropriate objects of charity, whether by reason of old age, poverty, illness or other similar cause. These restrictions are not uncertain or unreasonable but for the most part are such as are ordinarily sought to be applied by charitable organizations to those seeking charitable relief.

The decree of the superior court is affirmed.

*Decree affirmed.*